## Equitable Surety Co. *v.* Bank of Hazen.

## Opinion delivered December 20, 1915.

1. Indemnity bond—notice—liability.—In an action to recover on an indemnity bond, *held*, the notice given the indemnity company, was given within the time specified in the contract.

2. Indemnity bond—notice—waiver.—An unconditional denial of all liability on an indemnity bond, constitutes a waiver of compliance on the part of the plaintiff with the condition in the bond requiring him to give the company notice of a loss.

3. Contracts—indemnity insurance—construction of contract.—Where an indemnity company prepared an indemnity bond, it will be given the strictest interpretation which it will reasonably bear, against the indemnity company.

4. Indemnity insurance—warranties by employer.—One W. was cashier of appellee bank, and furnished a bond to appellee in the appellant company, conditioned on the faithful performance of his duties. The bond provided that any statements made by the bank in the procuring of the bond would be treated as warranties. The evidence was conflicting as to whether W. was short in his accounts at the time of the execution of the bond, but it appeared that the officers had no knowledge of any shortage whatever, and *held*, statements made by the bank officials based expressly on a mere knowledge and belief, are not strict warranties, and will not avoid the contract, unless it appears that the statements were known to be false at the time made.

5. Indemnity bond—examination of accounts—verification.—An indemnity bond stipulated that the bank examine "the accounts of the cashier" and verify "the cash, notes and other securities claimed to be on hand." *Held*, the only obligation on the bank, under the bond, was to examine the accounts kept by the cashier, and was not a requirement that they be verified.

6. Indemnity bond—verification of securities, etc.—accounts with banks.—An indemnity bond, conditioned on the faithful performance of his duties by the cashier of a bank, required that the bank verify "the cash, notes and other securities claimed to be on hand." *Held*, the stipulation did not include the verification of an account with a correspondent bank in another city.

7. INDEMNITY BOND—"CASH, NOTES, SECURITIES"—STIPULATION IN BOND TO VERIFY.—Where the indemnity bond of the cashier of a bank provides that the bank verify the "cash, notes and other securities claimed to be on hand," *held,* that a deposit in another bank would not be treated as falling within any of the terms used.

8. INDEMNITY BOND—LIABILITY OF SURETY—BREACH OF CONDITIONS—BURDEN OF PROOF.—Where the contract of a surety company is to pay all loss resulting from acts of the cashier of a bank amounting to embezzlement or larceny, except upon the conditions expressed in the bond and the certificates of the president of the bank which accompanied the application, it devolves upon the surety, before it can escape liability, to show that there has been a breach of those conditions.

Appeal from Prairie Chancery Court; *Jno. M. Elliott,* Chancellor; affirmed;

*Cockrill & Armistead,* for appellant.

1. The contract is not enforceable because the depositary bank accounts were not examined and verified. The contract between the parties warrants that the accounts of the cashier will be examined, and the cash, notes and other securities claimed to be on hand verified, once every three months. As to the Exchange Bank this was not done, and such neglect avoids the bond. 87 Ark. 348; 38 Col. 414, 10 L. R. A. (N. S.) 323, 120 Am. St. Rep. 128, 88 Pac. 451; 70 Pac. (Cal.) 660; 85 Atl. (N. J.) 325; 99 Fed. 242; 156 S. W. (Ky.) 394; 122 N. W. 25; 81 N. E. 330; 107 Pac. 1040; 72 Atl. 794; 103 Fed. 427; 84 N. E. 143; 44 So. 449.

2. The bond was void from the beginning because representations made inducing it were untrue. 122 N. W. 25; 81 N. E. 330; 107 Pac. 1040; 95 Va. 480; 84 N. E. 143; 116 Fed. 449; 85 Pac. 692; 156 S. W. (Ky.) 394.

3. The bond provides that no claim shall be payable that shall be filed with the surety after the period of six months from the death, resignation or removal of the employee. This demand is barred because all demands included in the amended complaint on which the plaintiff finally stood were not presented within six months from the time the cashier absconded. 71 Fed. 116.

*J. G. Thweatt* and *Sam Frauenthal,* for appellee.

1.    The contention that the contract is not enforceable because the account of the Exchange National Bank was not examined and verified, is not sustained by the provisions of the bond, nor by the evidence, nor by the law applicable to the case. It needs no explanation of an expert to show that the items of cash, notes and other securities, can not refer to the account of the Exchange National Bank, nevertheless the testimony on the part of the appellant clearly shows that the account in a correspondent bank does not come within the terms "cash," "notes" or "other securities."

The provisions involved here require only that there should be an examination of the accounts of the cashier, and as far as verification is concerned, they require a verification of the cash, notes and other securities on hand.   10 L. R. A. (N. S.) 323, note; 80 Ark. 49; 89 Ark. 471; 80 Fed. 766; 68 Fed. 459; 143 S. W. 997; 147 S. W. (Ky.) 406; 149 S. W. 1025; 87 Ark. 348; 70 Pac. 660; 85 Atl. 325; 99 Fed. 242; 81 N. E. 330.

2.    The testimony does not show that Walker was short in his accounts. The answer as to when and by whom his accounts were examined was incomplete. Forfeitures are not favored.   3 Cooley's Briefs, Law. of Ins. 1220; 120 U. S. 183. The evidence shows that not only a *bona fide* effort was made to examine the accounts of the bank, but that it was done with diligence and care.   80 Ark. 495; 89 *Id;* 471; 143 S. W. 998; 147 *Id.* 406; 149 *Id.* 1025 (Ky.).  A policy should not be declared void for a misrepresentation if the books were apparently correct and the inaccuracies showing dishonesty were such as only an expert could detect.   67 Pac. 989.

4.    The demands were all made within six months see 116 Fed. 449; 112 *Id.* 620; 85 Pac. 692; 156 S. W. 394. Really there was no examination which was certified to be correct on a certain date.

4.    The demands were all made within six months after Walker absconded and were not barred.   96 Ark. 387. But appellant denied all liability and thereby waived forfeiture.   53 Ark. 494; 74 *Id.* 72; 79 *Id.* 266; 94 *Id.* 21.

5. The findings of the chancellor are supported by the evidence and the decree should be affirmed.

McCULLOCH, C. J.   The plaintiff is an incorporated bank doing business at Hazen, a small town in Prairie County, Arkansas, and one R. E. Walker was its cashier. The defendant, Equitable Surety Company, is a corporation domiciled at St. Louis and is engaged in the business of writing fidelity insurance.   On May 20, 1912, defendant, in consideration of the payment of an annual premium of $25, issued to the plaintiff its bond in the sum of $10,000 as surety for said R. E. Walker, agreeing to reimburse the plaintiff for any pecuniary loss "sustained by any act or acts of larceny or embezzlement" committed by said Walker while in the employment of the plaintiff during the period of the bond.   The application for the bond was dated May 15 and the bond was to cover a period of one year beginning on March 28, 1912.   No explanation appears in the record as to why the commencement of the period antedated the bond, but that is not important in the present inquiry.   There was a renewal of the bond for the second year, running from March 28, 1913, to March 28, 1914.   The bond provided that the liability should not exceed the sum of $10,000 for loss sustained during the period of the first issue of the bond or any renewal thereof.

Walker absconded on February 2, 1914, and an examination of his accounts disclosed the fact that he was short in a large sum of money.   The undisputed proof in the case establishes the fact that Walker was short in his accounts about $19,000, and that said shortage constituted embezzlement or larceny within the meaning of the bond.   This action was instituted on July 25, 1914, to recover of defendant the sum of $10,000.   It appears from the testimony that most of the shortage occurred on account of sums from time to time purloined by the cashier from remittances made by the Exchange National Bank of Little Rock, the principal corresponding bank of plaintiff.   In fact, all the shortage occurred in this way except one large deposit made by an individual depositor, which the cashier wrongfully placed to his own credit

on the books of the bank. The action was instituted in the circuit court of Prairie County, but on motion of the defendant it was, without objection on the part of the plaintiff, transferred to the chancery court and was there tried on testimony adduced by each side. The decree of the chancery court was in plaintiff's favor for the full amount of the penalty of the bond, and the defendant has appealed to this court.

Counsel for the defendant urge three defenses here; first, that the demand of the plaintiff was not presented to the defendant, as required by the terms of the bond, within six months after the cashier absconded and his shortage was discovered; second, that there was a misrepresentation which constituted a breach of warranty concerning the condition of Walker's accounts at the time the bond was executed; and, third, that the accounts of the cashier were not examined "and the cash, notes and other security claimed to be on hand verified" as required by the terms of the bond.

(1-2) There is so little merit in the first contention that an extended discussion in relation thereto is unnecessary. The shortage was discovered in February, 1914, a few days after Walker fled, and immediately notice was given. Expert accountants examined the accounts from time to time and the full amount of the shortage was discovered. Defendant sent its own representatives and they discovered the amount of the shortage, or had an opportunity to do so, and correspondence took place between the parties within the period of six months named in the contract. In that correspondence the amount of the shortage was specifically set out, according to the items found by the accountants. Finally the defendant denied liability and the suit was instituted within the six months period named in the contract. There was an amendment to the complaint filed in September, 1914, in response to defendant's motion to make the complaint more definite and certain. There was sufficient demand made within the time specified in the contract, but, even if that provision had not been complied with, an uncon-

ditional denial of all liability constituted a waiver of compliance on the part of the plaintiff.

(3-4)   Before passing to the other defenses put forth here, it is worth while to mention that the contract of the surety is couched in language chosen by the defendant itself, and must be given the strictest interpretation which it will reasonably bear against the party who is responsible for selecting it. *American Bonding Co.* v. *Morrow,* 80 Ark. 49. The bond provides that the written statements of the employer relative to the employee, "his conduct, duties, employment and accounts, the manner of conducting the business of the employer, and other things connected with the issuance of the bond, together with any other statements in writing hereafter made by the employer to the surety" shall form a part of the contract and shall be treated as warranties. It will be observed from this language that the statements only of the employer are to be treated as warranties, and not the statements of the cashier for whom the defendant was to stand surety.

Now, it is contended that Walker was short in his accounts when the bond was written, and that there was a misrepresentation and breach of warranty concerning that matter. There is proof tending to show that Walker was short on February 1, 1912, about $1,500, and on April 1, 1912, something over $1,600. Walker made the following statement in his application: "When and by whom were your accounts last examined, and were they found correct? 4/1/12—Bank directors." That statement itself as to the time of examination, and whether the accounts were found correct, is ambiguous, but even in the strongest light it is not a statement made by any of the officers of the bank and can not be so treated in determining whether or not there has been a breach of warranty. Walker was the cashier of the bank, but he was not acting for the bank in making this statement, for it was his individual statement given for the purpose of securing the bond. It is true the president of the bank added the following statement with regard to Walker and his accounts: "His accounts were last examined on the

first day of February, 1912, and found correct in every respect. He is not to my knowledge at present in arrears or in default." There was no warranty of anything except that the cashier's accounts had been examined, and that is shown to have been true. The director's made a careful examination of the accounts kept by the cashier and found them to be correct. They did not examine the accounts of the Exchange National Bank, the correspondent, nor was the above statement a representation that the directors had done so. This did not constitute a warranty that there was no arrears or default at that time, but was only a qualified guaranty that there was no shortage or arrearage within the knowledge of the officers who made the certificate. Statements made by an employer expressly based merely on knowledge and belief are not strict warranties and do not avoid a contract unless it is shown that the statements were known to be false at the time made. 3 Cooley's Briefs on the Law of Insurance, p. 2443. That disposes of the second contention.

(5-6-7)    The third and last contention is that there was a breach of warranty with respect to the examination and verification by the directors of the bank of Walker's accounts and the cash, notes and securities on hand. The contention is that the breach consisted of a failure to examine the accounts of the Exchange National Bank showing the amount of the deposit held in that bank for the Bank of Hazen. The warranty on this subject is expressed in the bond in the following language: "That there shall be a complete inspection of the accounts and books of the employee on behalf of the employer at least once in twelve months from the date of this bond, such inspection to include an examination of all cash and securities the employee shall have custody or charge." The statement of the president of the bank, which accompanied the application and which constituted a warranty, reads as follows: "How often will the accounts of the cashier be examined and the cash, notes and other securities claimed to be on hand verified? Quarterly." There is an apparent conflict between those two stipulations, but the real conflict relates only to the frequency of the in-

spection, and that conflict is not important in the present controversy for the reason that the undisputed testimony shows that such examinations as were made at all were made quarterly. In fact, the testimony is undisputed that the board of directors made very thorough examinations of the cashier's accounts, as kept by him in the bank, and that they counted his cash on hand and the amount of the notes and other securities. This was done quarterly by the board of directors, and in addition to that the president of the bank made much more frequent examinations, to the same extent. In other words, the president came to the bank nearly every night and checked up the daily balances and counted the cash, and the books and accounts of the bank were thoroughly examined by him, in addition to the regular quarterly inspections made by the board of directors. The only thing left undone, either by the directors or by the president, was that of the examination of the statements and accounts of the Exchange National Bank. The president and directors, who testified in the case, explained that they began at first to compare the statements of accounts rendered by the Exchange National Bank with the accounts kept by Walker on the books of the Bank of Hazen, but they found it was impracticable to make an exact comparison for the reason that the accounts would not correspond because of the fact that there were always checks and remittances in transit. Other witnesses who testified in the case as expert accountants showed that generally the accounts between a country bank and its correspondents never precisely correspond on a given date, and that in order to make a comparison of such accounts it is necessary for it to be done by an expert accountant. This is termed by those experts a "reconcilement" of the account.

Now, the question for our consideration is whether or not the quarterly inspections made by the president and board of directors, as above indicated, constituted sufficient compliance with the requirements of the bond. That makes it necessary to construe the language of the bond and determine just what was required. The engage-

ment on the part of the plaintiff was to examine "the accounts of the cashier" and to verify "the cash, notes and other securities claimed to be on hand." That is the language adopted by the surety and must be most strictly construed against it. The language does not constitute an obligation on the part of the bank to verify the accounts of the cashier. It is only to examine them. That is to say, the accounts kept by the cashier himself: The undisputed proof shows that those accounts were very carefully and regularly examined. There was no breach of warranty in that respect. The other undertaking was to verify the "cash, notes and other security claimed to be on hand." Did the deposit with the Exchange National Bank of Little Rock fall within those terms? We think not. The ordinary construction of that language leads to the conclusion that it only meant the cash in the vaults of the Bank of Hazen and the notes and other securities on hand there. The money on deposit with the Exchange National Bank was not cash on hand, nor did it constitute "notes or other securities" within the meaning of the language used. That interpretation corresponds with the testimony on that subject of certain expert bookkeepers and accountants who were allowed to testify without objection. They said that cash on hand meant the cash in the vaults of the Bank of Hazen; that notes included checks as well as notes, and that other securities meant mortgages and scrip and other visible properties of the bank. Their testimony was to the effect that a deposit in another bank would not be treated as falling within either of the terms used. That view of the matter comports with the proper construction of the requirements of the bond as a whole. It was not anticipated that those who examined the accounts were to be expert accountants, or that they were expected to make such an examination as would necessarily discover any shortage. If such had been the requirement, there would have been no necessity for procuring a fidelity bond at all. The contract contemplated just such an examination as men of ordinary business affairs, who were directors of a country bank, would be expected to make, such as they

were supposed to be able to make. It was not required that they should be experts. *American Bonding Co.* v. *Morrow,* 80 Ark. 49; *Title Guaranty & Surety Co.* v. *Bank of Fulton,* 89 Ark. 471. If the surety company wanted to require a verification of the account of money deposited in other banks, it should have expressed that requirement in clear language so that the beneficiary in the bond could know what was required and comply with it. The evidence in this case shows beyond any dispute that the officers of the Bank of Hazen made every effort to comply in good faith with the requirements of the bond, and that they thought they were doing everything that the bond required them to do.

It is earnestly insisted that the present case must be controlled by the decision of this court in the case of *U. S. Fidelity & Guaranty Co.* v. *Bank of Batesville,* 87 Ark. 348, but we are of the opinion that that case has no application to the facts of this one. The service performed by the employee in that case, and the accounts to be kept and reported by him, were altogether different from those of a bank cashier. The employee in that case was a purchasing agent engaged in the business of buying time checks of laborers with money furnished by the Bank of Batesville. Money was advanced to the employee by the bank from time to time and he deposited it with the railroad contractors and sub-contractors and with local banks to use in buying up time checks of laborers. The agreement of the assured, as expressed in the application, was that as often as once a month the employee should account to the bank "for his handling of the funds and securities" and that the remittances should be checked up and the accounts ascertained to be correct. Nothing was done under this agreement except that the Bank of Batesville kept an account against the employee of the money sent to him for use in buying time checks and gave him credit for the time checks and expense accounts sent in from time to time. There was a shortage in the account, but the real question in the case was whether or not that shortage amounted to larceny or embezzlement, or whether the money was lost or unaccounted for

in some other way. The engagement on the part of the Bank of Batesville was not simply to keep an account of the money sent to the employee, and the reports made by the employee, but that they should require reports by the employee of purchases made by him and his expense account, require of him a monthly account of his handling of funds and securities. That necessarily included an account of the money kept on deposit with the contractors and local banks. That was not done and we held that the terms of the contract had not been complied with.

(8) Here, there was a specific requirement merely that the accounts of the cashier should be examined, and that the cash, notes and other securities on hand should be verified, and we are of the opinion that an examination of the accounts and the verification of the cash, notes and other securities on hand, without an examination of the accounts of the Exchange National Bank or a comparison of the cashier's accounts with those of that bank, was a sufficient compliance with the terms of the contract. If anything further was required, it should have been expressed in the terms of the bond, otherwise it can not be relied on as a forfeiture.

The monthly statements sent to the cashier of the Exchange National Bank did not constitute a part of the latter's accounts which the directors promised to examine. It would have been good business methods for them to examine those statements as a means of verifying the accounts of the cashier, but if it be conceded that it constituted negligence not to do so, that was not a breach of the warranty, for negligence in any respect, except that expressed in the contract itself, was not within the stipulated conditions. Mere negligence which causes loss under an insurance policy does not constitute grounds for forfeiture unless it is expressly made so in the contract. *German-American Insurance Co.* v. *Brown*, 75 Ark. 251.

The contract of the surety company is to pay for all loss resulting from acts of the cashier amounting to embezzlement or larceny, except upon the conditions expressed in the bond and the certificates of the president of the bank which accompanied the

application, and it devolves upon the surety before it can escape liability to show that there has been a breach of those conditions. Other authorities are cited by counsel for defendant as sustaining their contention that the language of the bond, when fairly construed, constitutes a requirement that the accounts of the Exchange National Bank should have been examined, but an analysis of those authorities shows that the decisions were in regard to contracts which expressly required such examination.

We are of the opinion that the evidence in this case shows that the terms of the bond were complied with by the plaintiff, and that the decree in its favor is correct.

Affirmed.

HART, J., dissents.