CROWN COACH COMPANY, INC., *v.* PALMER.

4-4548

Opinion delivered March 8, 1937.

740

*E. W. Moorhead* and *Pryor & Pryor,* for appellants.

*Reece Caudle* and *Partain & Agee,* for appellees.

HUMPHREYS, J. Appellant, Crown Coach Company, Inc., is a corporation domiciled in Missouri and engaged in operating passenger busses in several adjoining states.

Appellant, Tim Ackley, resides in Fort Smith, Arkansas, and was the driver of one of its passenger busses on July 22, when it ran into the car in which Mrs. Willis Palmer was riding.

Appellees, husband and wife, are residents of the state of Texas.

Appellees brought separate suits in the circuit court of Crawford county against appellants for carelessly and negligently driving the motor-bus owned by Crown Coach Company, Inc. into the back end of an automobile in which Mrs. Willis Palmer was riding with such force as to throw her in and about said automobile so as to seriously and permanently injure her.

Mrs. Palmer sued them for damages in the sum of $50,000 for personal injuries, loss of time and expenses for medical treatment.

Mr. Palmer sued them for damages in the sum of $10,000 for the loss of services of his wife and medical and surgical expenses incurred by him on account of the injury she received.

Appellants filed a motion and bond in proper form in each case for the removal of the causes to the United States court for the Western District of Arkansas on account of the diversity of citizenship of the parties, the amount involved, exclusive of interest and cost, being more than the sum of $3,000.

The trial court overruled the motions to transfer the causes to the federal court and appellants saved exceptions to the ruling.

In apt time separate answers were filed to the complaints denying the material allegations therein and

pleading contributory negligence on the part of Mrs. Palmer as an additional defense to the suits.

The causes were consolidated for the purposes of trial and submitted to a jury upon the evidence adduced and instructions of the court resulting in verdicts and judgments against appellants in favor of Mrs. Palmer for $14,500 and in favor of Mr. Palmer for $500, from which verdicts and judgments is this appeal.

According to the complaints, appellees sued appellants as joint tort-feasors. The liability alleged is a joint tort liability. The construction of the Congressional Acts providing for transfers to the federal court of causes of action is that a suit brought by a nonresident against a resident cannot be removed to the federal court on motion of the resident defendant. *Martin* v. *Snider*, 148 U. S. 663, 13 S. Ct. 706, 37 L. Ed. 602. It follows, of course, from that holding if a suit be brought by a nonresident against a resident and a nonresident on a joint liability, not separable, the defendants cannot transfer the cause from the state to the federal courts. The courts seem unanimous in this holding except in the case of *Stanbrough* v. *Cook*, 38 Fed. 369, cited by learned counsel for appellants in support of their motions in the instant cases. The court in that case bottomed its opinion upon the fact that the cause of action against the defendants was separable and took occasion to say in the opinion that: "It is also well settled that if a plaintiff has a cause of action in tort or upon contract against several defendants, which is joint, or, being joint and several, is declared on jointly by the plaintiff, the defendants cannot, by tendering separate issues in their answers, create separable controversies, so as to authorize a removal of the cause. *Louisville & Nashville Railroad Co.* v. *Ide*, 144 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63; *Pirie* v. *Tvedt*, 115 U. S. 41, 5 Sup. Ct. 1034, 29 L. Ed. 331; *Sloan* v. *Anderson*, 117 U. S. 275, 6 S. Ct. 730, 29 L. Ed. 899; *Fidelity Insurance Co.* v. *Huntington*, 117 U. S. 280, 6 Sup. Ct. 733, 29 L. Ed. 898; *Brooks* v. *Clark*, 119 U. S. 502, 7 Sup. Ct. 301, 30 L. Ed. 482.

The court did not err in overruling appellants' motions to transfer the causes to the federal court as the causes of action were based on a joint tort liability, not separable.

A reversal of the judgments is also sought upon the ground that the court erred in giving instruction No. 2 at the request of appellees, which is as follows:

"You are instructed that § 12 of act No. 223 of the Acts of the General Assembly of the state of Arkansas for the year 1927 provides as follows: "The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"And you are further instructed that the same section of this act provides that: 'The driver of any overtaking motor vehicle not within a business or residence district, as herein defined, shall give audible warning with his horn or other warning device before passing or attempting to pass a vehicle proceeding in the same direction.' It is argued that the instruction is abstract because there was no issue on the question of the bus trying, without giving a signal or a warning, to pass the automobile in which Mrs. Palmer was riding, and no evidence in the record tending to support such an issue. That was the main issue involved in the case. It was alleged in the complaints: 'That said defendant, Tim Ackley, so acting as aforesaid, carelessly and negligently undertook to pass and go around the automobile in which plaintiff was riding without any signal or warning whatever, and carelessly and negligently so turned and operated said bus as to cause same to run into and strike the said automobile in which plaintiff was riding without giving any signal or warning whatever.' "

This allegation was supported by the testimony of a number of the witnesses. By way of illustration the following excerpt is taken from the testimony of D. O. Edwards:

"Coming down the mountain the car was in front of us and there was another car coming up the hill pretty

fast. The driver started around the car in front and saw he couldn't make it. He darted back in and hit this car."

On cross-examination, this witness testified:

"Q. The bus turned out for the purpose of passing the car in front? A. It started to. Q. Are you sure that is what he started to do? A. That is what he aimed to do. Q. At the time he turned out this automobile was 200 yards away? A. Yes, sir. Q. He turned out and then whipped back in? A. Yes, sir."

Practically all the testimony was to the effect that Ackley gave no warning by blowing the horn or otherwise of his approach and attempt to pass around the car in which Mrs. Palmer was riding.

The instruction was responsive to the issue joined and the evidence introduced in support thereof.

A reversal of the judgments is also sought because the court refused to give appellants' requested instructions Nos. 22 and 23, which are as follows:

"A pure accident without negligence on the part of the defendants is not actionable, and if you should believe that the accident in this case was of such character it would come under the head of unavoidable accident, then the plaintiffs cannot recover, and your verdict must be for the defendants."
and

"A bus company or an individual cannot be held liable under the law for any damages or injuries caused by or growing out of an unavoidable accident, and if you find from the evidence in this case that the accident was unavoidable or was not due to the negligence of the bus driver, if any, then under the law the plaintiffs cannot recover, and your verdict must be for the defendants." These instructions were properly refused because no evidence was introduced to show the injury resulted from an unavoidable accident. The evidence introduced by appellees tended to show that the bus driver carelessly and negligently ran into the car in which Mrs. Palmer was riding; and that introduced by appellants tended to show that the driver of the car in which Mrs. Palmer

was riding slowed down suddenly and stopped without warning of any kind to the bus driver approaching from the rear.

A reversal of the judgments is also sought because the court refused to give appellants' requested instructions 5 and 17. These instructions are long and the court deems it unnecessary to set them out. They have been carefully read and considered with other instructions given in the case.

It is argued that these instructions present appellants' theory of the cases and that they had a right to have their theory of the cases presented to the jury. They are correct in this statement and had the court arbitrarily refused to submit their theory of the cases based on evidence introduced by them it would necessarily work a reversal of these judgments, but the court gave other instructions fully covering these requests and, hence, it was not error to refuse to give them.

A reversal of the judgments is also sought because the court refused to give appellants' requested instruction No. 25, which is as follows:

"You are instructed that the plaintiffs have failed to prove that Mrs. Palmer sustained permanent injuries, and your verdict must be for the defendants on that issue."

According to the testimony introduced by appellants, Mrs. Palmer sustained an injury to her back which necessitated the wearing of a brace continually in order to walk at all without assistance. Even with the use of a brace it is difficult for her to walk. There was evidence tending to show that the use of the brace might be dispensed with in case she would submit to a major operation as follows:

By taking a piece of bone from the shin bone and putting it up and down the vertebrae which needed fixing so as to make one operating joint out of them instead of several operating joints. Even if the operation should prove a success it would leave a permanent condition in the back which did not exist before the injury that would warrant a jury in finding that she sustained a permanent injury. If, without an operation,

the injury was such that she had to wear a brace continually in order to walk at all this fact would warrant a jury in finding that she was permanently injured. In view of this evidence it would have been error to instruct the jury that appellees failed to prove that Mrs. Palmer sustained permanent injuries.

The judgments are also sought to be reversed because the court refused to give instruction No. 16 requested by appellants which is as follows:

"You are instructed that under the evidence, as a matter of law, the plaintiff, Mrs. Willis Palmer,.was engaged at the time of the accident in what is known as a joint enterprise with the driver and other occupants of the car in which she was riding, and if you believe from the evidence that the driver of the car in which Mrs. Palmer was riding was guilty of any negligence directly contributing to the injuries of the plaintiff, Mrs. Palmer, then plaintiffs cannot recover, and your verdict must be for the defendants."

Mrs. Willis Palmer, Mrs. Collins, Mrs. J. W. Summerville, Mrs. Davidson and Mrs. Cooke went from Texas in Mrs. Cooke's car to Mt. Sequoyah near Fayetteville, Arkansas, to attend a convention of the Methodist Church, and on July 22, left the convention on their return trip to Texas, traveling in Mrs. Cooke's car on highway 71. Mrs. Summerville was driving and they were sharing the expenses on the return trip. Aside from sharing the expenses of the trip there is nothing in the record indicating that they were engaged in a joint enterprise. Mrs. Palmer was riding in the back seat as a guest of Mrs. Cooke and nothing is revealed in the record to show that she exercised or attempted to exercise any control over the driver. At the time she received her injury she was sitting in the back seat. We think under the state of the evidence the most appellants were entitled to was a submission of that issue to the jury under a proper instruction as to what would constitute a joint enterprise. In American Jurisprudence, vol. 5, p. 786, we find this language used: "It is not sufficient that the passenger indicates the route or that both parties have certain plans in common, such as a 'joy

ride'; the community of interest must be such that the passenger is entitled to be. heard. in the control and management of the vehicle—such as practically to amount to joint or common possession thereof. Nor does the fact that the guest agreed to pay the expenses of a trip necessarily establish a joint enterprise."

In vol. 4, Blashfield's Cyclopedia of Automobile Law and Practice, p. 171, § 2372, the following language is used in dealing with the same subject:

"An essential, and perhaps the central, element which must be shown in order to establish a joint enterprise is the existence of joint control over the management and operation of the vehicle and the course and conduct of the trip. There must, as said in another connection, in order that two persons riding in an automobile, one of them driving, may be deemed engaged in a joint enterprise for the purpose of imputing the negligence of the driver to the other, exist concurrently two fundamental and primary requisites, to-wit, a community of interest in the object and purpose of the undertaking in which the automobile is being driven and an equal right to direct and govern the movements and conduct of each other in respect thereto. * * *

"It is commonly a question of fact, for the jury to say, whether a joint enterprise existed between the driver and another occupant of an automobile, except where the evidence as to the existence of such a relation is insufficient to go to the jury."

Appellants' requested instructions Nos. 14 and 15 which were given by the court relative to what constituted a joint enterprise plainly told the jury that if these ladies were engaged in a joint enterprise and the driver of the car, Mrs. Summerville, was guilty of contributory negligence; her negligence then would be attributed to Mrs. Palmer and that appellees could not recover.

Appellants also contended that the judgment in favor of Mrs. Palmer is excessive. Mrs. Palmer was 32 years of age and capable of earning from $125 to $150 per month as a school teacher. She had been teaching a number of years and had contracted to teach a school

in Texas for $125 per month at the time she was injured. She had a long expectancy and according to the evidence introduced by her she will never be able to teach school again. We had occasion to refer in this opinion to the character and kind of injury she received and deem it unnecessary to describe the injury again. We simply add that after she received the injury and reached her home in Texas she suffered intense and excruciating pain. Immediately after being hurt she complained of her back being broken and after she reached Texas her physician required her to lay flat on her back four months on a hard cot; that she wears a cast to hold her back in position; that it is a brace with steel supports; that without it she is helpless, can only walk across the floor; that she cannot lift or move objects; that the brace was put on shortly after the first X-ray pictures were taken about August 20; that she has been compelled to wear the brace ever since in order to get about at all; that the least exertion causes her great pain and suffering. We think the character and permanency of the injury which has incapacitated her and destroyed her earning capacity together with the intense pain she has suffered and will continue to suffer fully justified the jury in rendering a verdict in her favor for $14,500. Certainly it can not be said that the amount of the verdict indicates passion or prejudice on the part of the jury.

No error appearing, the judgments are affirmed.

SMITH, C. J., SMITH and McHANEY, JJ., dissent.

SMITH, C. J. (dissenting). Mrs. J. W. Summerville, witness for Mrs. Palmer, testified: "We were descending the mountain near Mountainburg, about one-eighth of a mile north of Mountainburg, on the last curve before we reached the level of the bridge, driving in second gear. About one minute before the accident I glanced at the speedometer and it was 18 miles an hour. I was trying to shift in third when we received the impact. I didn't know what struck us, what took place. I stopped the car shortly, not too quick. As soon as I got stopped with the car I learned the bus had run into the rear of the car in which we were riding."

Tim Ackley, bus driver, gave testimony which was not materially contradicted except as to the speed of the car in front of him, as follows: "I was coming down the Mountainburg hill in third gear and near the bottom I went in fourth gear. I saw a car down there and another car down there coming up the hill. The latter was an old touring car with a loose steering gear. The car in front of me was slowing down fast, running twenty or twenty-five miles an hour, and I was running between twenty-five and thirty. I pulled to the left to see if I could go around it, but the other car wouldn't give me room. It was driven by a bunch of boys and was wabbling over the road. The car in front of me was slowing down faster than I could. I pulled back on the right side of the road and was going between three and five miles an hour when I hit the car. When I hit the car it moved it between five and ten feet. When I first saw the situation, when the car in front of me was slowing down and the car coming up on the left, I was going between twenty-five and thirty. I saw the situation and applied the foot brake and the emergency brake. I could have applied no more brake. I was using between 110 and 120 pounds air pressure. I was running in third gear down to the bottom and then in fourth. The car in front gave no sign that it was retarding its speed. Just before I hit it it was going five miles or three to five miles * * *. When I first saw the car coming north it was near a side road on the east side of the road. When I hit the ladies' car this other car was about even with the front end of their car."

I am able to follow plaintiff's pilgrimage from Texas back to a point where the driver, Mrs. Summerville, slowed down on a mountain road while endeavoring to shift into low. Evidence is not lacking that the rear of the car was hit by a bus, and that the impact caused property damage of $1.50 per capita to plaintiff and her friends. Probative value should not be denied Mrs. Palmer's expostulations to the bus driver when she ascertained that a responsible agency was the offending medium, and that first impressions of tire trouble were erroneous.

Evidence has been given to show serious and permanent injury, and this is not necessarily destroyed by statements of Mrs. Summerville that a few hours after the accident these ladies were "laughing and cutting up about the incident." Physical impairment does not always sound an immediate alarm, and damage may be obscure.

That Mrs. Palmer came to Little Rock the same afternoon and drove to Waco the following day, is a circumstance not sufficient within itself to impeach the plaintiff's story, for she says that, in Texas, Dr. Bailey was employed. Failure of this physician to attend the trial, and absence of his deposition, are not damnifying to the cause, for many things might account for this obscurity; and Dr. Rose, who did testify, had knowledge from Mrs. Palmer's delineation as to developments between injury and trial.

Before the trip to Fayetteville, Mrs. Palmer had subjected herself to two major operations, but it cannot be argued that these affected her health in competition with the injuries, because in weight alone she had gained ten pounds. Nor is there any suggestion that the jury did not understand the terms when plaintiff's witness said that "exostosis is present on the articular surface of the vertebrae, with calcification, and the anterior-posterior view of the thoracic spine shows a condition that might be cartilage between the vertebrae, but not involving the body itself."

The language is quite simple, and can be understood because "there was no pathology in the lumbar vertebrae." These words were vastly simplified when it was explained by the doctor that he would not classify the patient as having a broken back, or a fracture of the bones; that she should wear a patent brace to keep the joints from moving; that when these had grown together there wouldn't be any pain, and Mrs. Palmer would probably be strong and well as far as that disorder was concerned.

An X-ray picture was taken on the day of the accident, which disclosed that Mrs. Palmer had a beginning of arthritis of the eighth and ninth vertebrae, and this picture, compared with one taken for the plaintiff, showed

that the same condition was present on both occasions, possibly a little intensified in the later exhibit. Following the accident, Mrs. Palmer walked into the clinic. The physician says that she complained only of a bump on the head and pains in her stomach.

The jury heard the testimony and returned a verdict.

In this dissenting opinion I only mean to express my lack of comprehension and understanding as to how the transactions presented to the jury could be converted into a judgment of $14,500 in favor of a plaintiff who admitted two serious operations prior to the accident, with their attending impairments; who on the way to Little Rock laughed and joked; who was able to go by car to Waco the following day; who did not call her family physician as a witness; who had mild beginnings of arthritis; who was seen walking around in Ft. Smith the day before the trial, and who after the accident had attended a conference in Dallas. I only mean to say that in view of this record, and the mild nature of the impact, the amount allowed as compensation—even if the defendant were negligent, which it was not—is so grossly excessive as to establish passion or prejudice upon the part of the jury, and the judgment ought not to stand.

I am authorized to say that Mr. Justice Smith and Mr. Justice McHaney concur in this dissent.