AMERICAN EQUITABLE ASSURANCE COMPANY OF
NEW YORK *v.* SHOWERS.

4-4918

Opinion delivered January 31, 1938.

522

...*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellants.

*Sid J. Reid* and *Rowell, Rowell & Dickey,* for appellee.

BAKER, J. Two suits were filed in the Jefferson circuit court by H. C. Showers, the first against American Equitable Assurance Company of New York and the second against New York Fire Insurance Company. The plaintiff held two policies of fire insurance, one issued by the American Equitable Assurance Company, in the sum of $1,000, and the other by the New York Fire Insurance Company, in the sum of $5,500. Sometime prior to the fire which destroyed the stock of merchandise and fixtures sued for, the plaintiff had suffered a small loss by fire, amounting to $434.51, and this had been apportioned between the two policies so that one paid $66.85 and the other $367.66, and the amount so paid out by each company had been deducted from the respective policies. The drug store, which was called The Star, belonging to the

appellee, Showers, was burned on the 24th of November, 1936. Shortly thereafter the plaintiff having given due notice, executed and sent proofs of loss. More than sixty days thereafter, the companies were sued. The American Equitable Assurance Company of New York was sued for $933.15 and New York Fire Insurance Company for $5,132.34, and each for the 12 per cent. penalty and attorneys' fees. The defendants answered and pleaded that the stock of merchandise of the plaintiff was not more than $2,000 in value and that the fixtures were depreciated and were of little value, and further alleged that there was considerable salvage; that the plaintiff failed and refused to care for the salvage in violation of the provisions of the policies. Later, each of the answers was amended by pleading that certain suits had been filed in the municipal court of the city of Pine Bluff and in justice of the peace court before J. P. McCool of Sheridan in Grant county, and numerous garnishments had been issued against the defendant companies.

Considerable testimony was had in the trial of these cases which had been consolidated by proper order of the court. Verdicts were rendered for the amounts sued for and the court thereafter, upon hearing testimony, adjudged the 12 per cent. penalty provided by law and fixed attorneys' fee at $1,000, and apportioned it between the two companies. From the judgments rendered upon the verdicts aforesaid, and the orders of the court fixing penalties and attorneys' fee, appellants have duly prayed appeals.

For the sake of brevity the appellants will be referred to as the "insurance companies," or, if it is necessary to designate them separately, one as the "American Company," and the other as the "New York Company," and appellee will be referred to by name or as plaintiff, appellee, or insured.

The insurance companies say in the beginning of their brief that it should be realized that there is no attempt on their part to prevent a recovery by the plaintiff on the insurance policies, but they claim he was not entitled to the full amount sued for for the reason that by his neglect or inattention he abandoned a part of the

property in violation of the provisions of the contract. In other words, they say the companies' theory was that plaintiff could not recover for so much of the property as could or might have been saved by protection of the salvage. On this theory, they offered several instructions which we think are unnecessary to set out as will hereinafter appear.

They also argue that at all events the court should not have adjudged penalty and attorney's fee against them and it is upon these two contentions, as main issues, that the appeals have been submitted.

We think it is unnecessary to set forth the instructions requested by the insurance companies upon their theory as to the salvage after the fire, for the reason that the very question was submitted by the court in the first instruction given and the jury was told, not in the exact language as asked by the insurance companies, but to the same legal effect, that the plaintiff could not recover the value of the salvage if he neglected to use all reasonable means to save the property and that such neglect, if there was any, on the part of the plaintiff, would prevent a recovery by him of the value of so much of the property as the jury might find from the evidence could have been saved by the use of reasonable means at plaintiff's command. We have frequently said that it is not necessary for the court to multiply instructions, which, of course, means that if an issue is submitted by the court under proper instructions, there can be no necessity for the repetition of the instructions given in such submission, in some different form. More than seventy-five years ago this court announced the same rule in a civil case. *Johnson* v. *Brock,* 23 Ark. 282. We are still consistently following the same rule. *Crown Coach Co., Inc.,* v. *Palmer,* 193 Ark. 739, 102 S. W. 2d 853.

A short statement of the testimony might be helpful in the determination of some of the matters at issue.

The fire occurred about 2:00 o'clock in the morning. Showers got to Pine Bluff sometime early in the forenoon of that day and remained there until about 3:00 o'clock that afternoon, at which time he said that he had to return to his home at Sheridan. He put in charge of whatever

was left of The Star, a young lady, who had been working in the store, a colored boy, who had also been employed there and a Mr. Hamick, who had been employed by The Star Drug Store and one other establishment doing merchant policeman's work, or, as we understand, who was a watchman for these places of business. About dark that afternoon Showers was arrested at Sheridan, returned to Pine Bluff and there put in jail, where he was kept for three days without permission to see anybody. Early the next morning the young lady clerk and colored boy were both arrested and likewise put in jail. There is no proof in this record showing who may have instigated these arrests and imprisonment of these parties. The young lady and negro boy were kept in jail about, or approximately, twelve hours. Why they were arrested and imprisoned without charge, or who procured their arrests are matters not disclosed by the record as abstracted.

The only importance that may be attached to these particular matters is the fact that they may have hindered to some extent the appellee in the preservation of whatever value remained after the fire. The insurance companies' agent testified that he had advised the insured that if he would carry 90 per cent. of the value of his stock and fixtures he could get a reduction in the insurance rate. On August 12 upon a rough estimate made by him, he canceled out a $2,000 policy and issued the $5,500 policy and advised Mr. Showers, when the inventory was completed, upon investigation, he would adjust the coverage according to what the inventory showed, and later upon this showing he issued the $1,000 policy. Several witnesses were examined who testified to the value of the stock of merchandise and the fixtures. It is not necessary to set forth this testimony with any degree of detail for the reason it must now be considered in the light most favorable to the appellee.

Let it be said that there was evidence offered by those who were in position to know to the effect that the inventory gave the total value of fixtures and stock at $8,820.72. Several witnesses gave estimates of the value approximating that amount, or perhaps somewhat less. Showers testified to the $8,820.72, from which he says he

deducted $434.51, paid him in October prior to this last fire. He also gave testimony as to his September 1st inventory, the amounts purchased and sold thereafter to the date of the fire, and stated that at the time of the fire he had a value of $8,805 and that he was suing for $6,-065.49. This evidence was substantial. We find no reason why the jury may not have believed it. They could have believed it and made a substantial allowance for the value of the salvage and still have rendered a verdict for the amount sued for.

We are convinced that there was some value in this salvage, but according to the proof offered, as abstracted, we find no way of determining or approximating with any degree of certainty the value of such salvage.

Appellants have furnished striking examples of what may be said by way of speculation, in regard thereto, without the support of substantial testimony justifying the conclusions. Because there was some value, that question was submitted to the jury and appellants had whatever advantage there was on account thereof, and all questions in regard thereto are settled by the jury's verdict. The correct rule is as announced in the instruction given. Appellants do not contend there was any forfeiture. *German-American Ins. Co.* v. *Brown,* 75 Ark. 251, 87 S. W. 135; *Benson* v. *Fireman's Ins. Co.,* 150 Ark. 532, 234 S. W. 628; *Equitable Surety Company* v. *Bank of Hazen,* 121 Ark. 422, 181 S. W. 279.

The other question in regard to the penalty and attorney's fee is for all practicable purposes settled by the foregoing statement. Plaintiff sued for and recovered the amount of insurance remaining in force on his policies. The insurance companies defended not only upon the merits, but after the conclusion of the evidence in regard to the merits of the case they tendered proof that numerous suits had been filed against Showers, some at Sheridan where he lived, all of which had been dismissed, and several at Pine Bluff, some of which had been paid off by Showers, and others upon which there had been no service of process against him.

Let it be remembered that Showers' place of residence was at Sheridan. After the business was destroyed

at Pine Bluff there was perhaps little occasion for him to have visited that city. In anticipation of claims that might be asserted against him at Pine Bluff, he placed in the hands of his attorneys moneys with which to pay claims and these were settled as the attention of his attorneys was called to them. It is said that two claims were paid to M. L. Reinberger, one of appellants' attorneys, by Showers' counsel. Notwithstanding this fact, the same attorney representing the insurance companies, filed other suits in the municipal court at Pine Bluff and without obtaining any service upon the defendant Showers, had garnishments issued against the insurance companies and filed answers, as representing garnishees, said insurance companies, and offered as a reason for the failure to pay Showers promptly, the fact of these pending garnishments.

The trial court properly disregarded such proceedings as a reason or legal excuse or cause for withholding payment on the part of the insurance companies. The cause or reason so assigned, that is the pendency of these garnishment proceedings, is a situation wholly inconsistent with the defense tendered to the main suit, and that is that there was not a loss exceeding or approximating $2,000. A question of good faith may well arise under the circumstances.

Appellants have raised another question incidental to the matter under consideration; that is to say, that the attorneys' fee of $1,000, apportioned $150 against the American company and $850 against the New York company, is excessive. We do not think so. The trial court, in addition to the fact that he is acquainted with the record, with the amount involved, and quality of service rendered, heard testimony and then determined the amount in accordance therewith.

No question is urged as to the apportionment between the two companies. The record justifies the judgment of the court.

Since no error appears, the judgment is affirmed.