Missouri Pacific Transportation Company *v.* Sharp.

4-4687

Opinion delivered June 28, 1937.

406

Gerland P. Patten, C. M. Erwin, Jr., and Carmichael & Hendricks, for appellants.

F. M. Pickens, H. U. Williamson and W. R. Donham, for appellee.

BUTLER, J. Appeal from a verdict and judgment awarding appellee the sum of $37,500 as damages for personal injuries alleged to have been sustained by reason of the negligence of appellants' employee while appellee was a passenger upon one of appellant's motor buses. The grounds for reversal, in the order presented in appellants' brief, are: (1) that the verdict and judgment are uncertain; (2) error in the admission of incompetent evidence; (3) no causal connection or relation is established between the alleged accident and the damage complained of; (4) lack of substantial evidence to support the verdict; and, (5) that the amount of damages awarded is excessive. It is clear that the third and fourth grounds are the principal ones upon which a reversal is sought, and these are so connected that they will be examined together.

In testing the sufficiency of the evidence to support a verdict the appellate court is controlled by general rules of universal application which have been recog-

nized by this court in a long line of decisions. Among these are the following: that juries are the sole judges of the credibility of the witnesses and the weight to be given their testimony; on appeal, in testing the sufficiency of the evidence, such evidence will be viewed in the light most favorable to the appellee and will be sustained where there is any substantial testimony to support it, although it may appear to the appellate court to be against the preponderance. *St. L. I. M., etc.* v. *White,* 48 Ark. 495, 4 S. W. 52; *Richardson* v. *Cohen,* 113 Ark. 598, 167 S. W. 83; *American Surety Co.* v. *Kinnear Mfg. Co.,* 185 Ark. 953, 30 S. W. (2d) 825; *So. Lbr. Co.* v. *Green,* 186 Ark. 209, 53 S. W. (2d) 229; *East Ark. Lbr. Co.* v. *Moss,* 186 Ark. 30, 52 S. W. (2d) 49; *American Co.* v. *Baker,* 187 Ark. 492, 60 S. W. (2d) 572. These rules are so well-settled that reference to them appears unnecessary, but are noticed because of the earnest argument of learned counsel for appellants that because of modern trends this court would be justified in disregarding them where it appears that the preponderance of the testimony is against the verdict or that the supporting testimony is improbable and unreasonable. The argument of counsel is not without merit and cases sometimes arise in which we might desire that the rules governing us were otherwise, but nevertheless we have no right to alter or amend them. This court, through its history, has consistently adhered to these rules although their application may have, at times, worked a flagrant injustice. Counsel say: "There is no excuse for the highest courts of the country following a blind and unreasonable precedent." In the first place, we think the precedent is founded upon fundamental law governing jury trials and, in the second place, the remedy lies with the lawmaking body and not with us; lastly, ample protection is given litigants by the power inherent in trial courts to set aside the verdict of the jury where the preponderance of the evidence is contrary to it. That trial courts fail to perform this duty and to exercise this power is no reason for a usurpation by the appellate court.

In the case of *Missouri & N. A. Ry. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478, the court, in its statement, said: "The appellee was employed by the appellant railroad company as a brakeman and was injured while engaged in switching a freight train * * * by stepping on an unblocked frog * * *. The great preponderance of the evidence appears to be that appellee was not injured in the manner testified by him, indeed, that he was not injured at the frog at all, and one of the grounds upon which we are asked to reverse this case is that the evidence shows that it was physically impossible for appellee to have been hurt in the manner testified to by him." In commenting upon the evidence above noted, the court said: "We will not reverse the judgment because of the insufficiency of the evidence, for, as we view this evidence, it is not physically impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner."

We test the evidence on behalf of the appellee by the rules stated. The verdict depends largely, almost entirely, upon the testimony of the appellee, alone, which is to the effect that on the afternoon of August 12, 1935, he boarded appellants' bus as a passenger to be transported from Newport to Russell, Arkansas. As he was in the act of leaving the bus upon reaching his point of destination, the driver opened the door and, before appellee could alight, the driver jerked the door shut striking him upon the head and knocked him backward over and against some other object inflicting injury. The only remark he made was, "You liked to have got me that time," and, without further comment, got off the bus and walked about three miles from Russell to the home of his son-in-law. At the time he received the injury he felt the force of the blow, and, as he expressed it, "It addled me," but he did not realize that he had any injury which would produce any serious consequences. He told his son-in-law of the incident, and the next morning went with his daughter and others in an automobile to Searcy. While there in the office of a physician with

another who required the attention of the physician, he made some complaint of unease and lay for a time upon a couch in the doctor's office, but did not consult him. That afternoon he returned to the home of his son-in-law, and the next morning went to Russell—a distance of three miles—on a wagon drawn by a team of mules and stood beside the driver on a wooden frame all the way. After reaching Russell he returned by bus to Newport. On the day following, August 14, he went to see Dr. Stephens, a regular practicing physician, for examination. To this doctor he detailed the occurrence of the evening of August 12, and, on examination, the physician found an injury on appellee's back from which it is claimed total and permanent injury has followed.

On the question of the incident testified to by appellee as having occurred as he was in the act of alighting from the bus, and its causal connection with his present condition, counsel for appellants call attention to the lack of corroboration of appellee's testimony. The corroboration is not altogether lacking, though slight. A certain witness testified that he was a passenger on the bus in question on the afternoon of August 12; that he saw appellee on it and noticed him as he was preparing to leave the bus, but that he was paying no particular attention; that when the bus stopped he was looking out of a window for another person whom he expected to see; that at this time he heard a commotion in the front of the bus, and, because of it, made some exclamation, but paid no further attention and did not see what occasioned it.

The proof seems to be ample that appellee was in fact a passenger on appellants' bus; that it reached Russell after nightfall, and that appellee was the only person who got off at that point. Counsel further contend that the preponderance of the testimony contradicts the appellee and demonstrates that there was no untoward incident as he got off the bus, and that he was not, in fact, injured by the closing of the bus door or in any other way. There were discrepancies in the testimony of some of these witnesses, and certain facts in con-

nection with the testimony of others from which the jury might well have concluded, as to some, that they were mistaken as to the time when they were on the bus and, as to some others, that the surrounding facts were such as to make it probable that they were not in a position to observe and know what actually occurred. At any rate, the jury and trial court had the benefit of the pres- ence of the witnesses and saw their demeanor upon the witness stand and the jury has accepted the testimony of the appellee as true. It is argued by counsel for ap- pellant that appellee's testimony should be disregarded because it was physically impossible for him to have been injured in the manner he described and, in this con- nection, both he and counsel for appellee described the manner in which the door was constructed and how it opened and closed, the one contending that, because of its manner of construction, it was physically impossible for the closing door to have struck appellee's head knock- ing him backward, while the other as seriously contends that appellee's injury, as testified to, happened in a man- ner both possible and probable. The argument of both go beyond the record. We are uninformed by the evi- dence as to these matters, and we cannot say that it was physically impossible for the injury to have been sus- tained in the manner appellee described. It might have been highly improbable that the injury occurred in that manner, but that improbability is no cause for reversal. As is said in *Missouri & N. A. R. Co.* v. *Johnson, supra,* "There is no evidence to show that it was physically impossible."

On the question of "no causal connection or rela- tion between the alleged action and the damages, pain and suffering which appellee claims" attention is called to the following evidence. After appellee had alighted from the bus at Russell at a time when it was dark and raining, persons were standing near to whom he made no complaint of injury and, while taking shelter in a nearby filling station, he made no complaint and showed no evidence of having been injured, but engaged in casual conversation, principally about farming. From

there he walked three miles to the house of his son-in-law and, on the morning after, rode three miles to Russell standing upon a wagon without making any complaint or in any way evidencing physical discomfort, and it was not until the day following, August 14, that he went to a physician for examination. These circumstances were proper for the consideration of the jury both as to whether or not appellee was injured and, if so, the extent of such injury. But we cannot say that they are of such probative force as to justify the conclusions, first, that no injury had been sustained, as claimed by appellant, and second, that there was no causal connection between the accident and his subsequent condition. It is a matter of common knowledge that injuries which are apparently negligible from which no ill effects are immediately felt sometimes result in the most serious consequences; whereas, other injuries, apparently grave, prove, in fact, not to be of a serious nature and the injured person speedily and completely recovers.

The physician who first attended the appellee seems to be one of repute and long experience. He testified that when he first examined the appellee he found him apparently suffering and nervous to the extent that he couldn't stand up very long at a time. Upon his body, there was a discoloration at a certain point near the spine. In about a week, appellee was brought back and appeared to be no better, and in the next day or two witness was sent for to visit appellee at his home where he found him much worse. Witness made a thorough examination, found his vital organs functioning properly, and discovered no cause for his condition except the injury of which he saw the evidences at the time of the first examination. The evidence is undisputed that before, and up until, the time of alighting from the bus at Russell, appellee had been an active and vigorous man and free from disease.

Reverting to the errors complained of, we now notice the contention that the verdict and judgment are uncertain. In giving instruction as to the form of the verdict, the trial court told the jury that if it should

find for the plaintiff the verdict should be, "we, the jury, find for the plaintiff and assess his damages (naming the amount) whatever you believe from a preponderance of the evidence he is entitled to. If you find for defendants, the form of your verdict will be, 'we, the jury, find for the defendants,' * * *." The jury returned the following verdict: "We, the jury, find for the plaintiff and assess his damages at $37,500. (Signed) L. B. Simmons, Foreman." This verdict is incorporated in the judgment which concludes as follows: "It is, therefore, by the court considered, ordered and adjudged that the plaintiff do have and recover of and from the *defendant* herein, etc." Appellee calls attention to the failure of appellants to except to the form of the verdict and judgment and the failure to bring said objection forward in their motion for a new trial. It is certain from the record that, if there is any liability, both the defendants, the corporation and the driver of its bus, are responsible and the verdict was necessarily against both of them. The trial court correctly so instructed the jury. As the judgment must conform to the verdict (§ 6271, Crawford & Moses' Digest) it follows that the omission of the letter "s" from the word "defendant" must be treated as a clerical error, and there is no uncertainty in the judgment.

The contention that error was committed by the trial court in the admission of incompetent evidence is based upon questions propounded to a certain witness, a Mrs. Tate, on cross-examination. This witness, in her testimony in chief, had testified that she was on the bus when appellee, whom before that time she had never seen, alighted at Russell. She identified appellee, who was lying on a cot in the court room, as the same person she saw alight. She was uncertain as to the date, but fixed it on cross-examination as the day upon which she had cashed certain checks at a bank, and which was two or three days after her daughter had been to a physician, a Dr. Wilson, for treatment. The date was material. There is little, if any, dispute in the evidence relating to the date of appellee's alleged injury, and if the date

when witness rode the bus, when she thought she saw appellee alight, was a different day to that established, then witness is mistaken in her testimony. On rebuttal, the cashier of the bank was called whose testimony showed that no checks were cashed by Mrs. Tate on the 12th of August or on any other day just preceding or succeeding that date. Another witness, called in rebuttal, who had charge of the records in Dr. Wilson's office, testified that these records showed the last treatment of Mrs. Tate's daughter to have been on June 22.

The testimony of the rebuttal witnesses did not tend to dispute the testimony of Mrs. Tate regarding collateral matters, but was material as tending to show whether or not she was, in fact, on the bus at the time when appellee claims to have been injured. There was, therefore, no error in the admission of the rebuttal testimony.

The most serious question for our consideration is that relating to the amount of the verdict. We agree with the appellants that it is excessive and doubtless the result of passion and prejudice. It is not difficult to perceive the evidence which would engender, in the minds of such men as ordinarily compose a jury, a prejudice against the appellants on their contention that the appellee was not, at the time of the trial or previous thereto, suffering any pain, but that his condition was simulated, and this in the face of the undisputed physical fact that he (at the time of the trial) was a mere shadow of his former self and his hands had become deformed (ankylosed) by reason of having held them continuously under his head in an effort to lessen his suffering.

Dr. G. K. Stephens is the physician who made the first examination of appellee after his injury and who discovered the indications of injury near his spine. He testified that appellee grew progressively worse from the time of the first examination, so much so that a short time thereafter he suffered so intensely that opiates were required and it became necessary that he be taken to a sanitarium; that his condition had become no better. This doctor made exhaustive examinations of the appel-

.lee, but found no disease of his vital organs, or anything else wrong except the injury to his spine. Witness stated further that appellee's speech is weak and disconnected; that he gives out when he tries to talk, trembles, is easily exhausted and is just a nervous wreck; that his reflexes are exaggerated and that he has suffered constant pain for thirteen months; that his hands are drawn and stiff and, in witness' opinion, he will continue to suffer as long as he lives.

This testimony was corroborated by neighbors of the appellee who saw him at times convulsed by reason of the intensity of his suffering, and by Dr. Justice, appellee's family physician for more than twenty years. This physician testified that he would frequently be called as much as three or four times a day, and at times would find the patient in convulsions. Witness attributed this condition to the injury and said: "Having stayed over him for thirteen or fourteen months, and his not having improved any more than he has, I shouldn't think he will ever be well again."

The testimony of those who had known appellee for a considerable period prior to August 12, was to the effect that he was a man of physical strength and vigor, a hard worker, and apparently healthy; that he was generally regarded as a man of excellent character and of more than ordinary ability as a farmer. The witnesses who saw him after his injury testified as to his change in physical appearance for the worse and his great suffering which they had observed.

The jury accepted the testimony of the foregoing witnesses as true and disregarded that of the specialists who testified that appellee was not suffering at all, but merely pretending. Accepting the testimony adduced by the appellee relating to the nature and extent and probable duration of his suffering, it justifies a large award for pain and suffering.

Appellee was entitled to recover damages for the loss of his earning power as well as for his pain and suffering. As to what his earning power was previous to his alleged injury we have but little evidence. Appellee was asked the following question by his counsel:

"How much did you earn per year before you got hurt?" He answered, "I don't know—some years I made as high as thirty or thirty-five bales of cotton and some years I didn't make so much." This was all appellee's testimony relating to that subject and the only other testimony we discover as to the amount of his earnings is that of a Mr. Causey who stated that he had known the appellee two or three years; that the first year of his acquaintance appellee made a crop on land rented from witness' father; that witness had rented land to the appellee for two years following that; that appellee was a good farmer and a hard working man and produced more crops per acre than others who had the same amount of land; that the land rented to appellee by witness was fertile producing an average of a bale of cotton per acre; that he would work between 25 and 27 acres in cotton and some additional in corn; that the first year he made a good crop, but the second year, on 25 acres to cotton, he made only a little over seven bales; that appellee owns his own team and farming equipment and is a renter and paid him (witness) one-fourth of the cotton made as rent for the land put to cotton; that appellee, from his portion of the crop when he made only seven bales, paid the witness in full for advances and there remained for his credit a balance for which he was given a check. Witness did not remember the amount of the check, but it was not as much as $300.

The evidence fails to show the expense incurred by appellee, independent of his own work, in producing and harvesting his crops. Therefore, it is more or less uncertain what he might have been reasonably expected to earn during his life expectancy which appears to have been slightly above 15 1/3 years as shown by mortuary tables.

It seems likely that appellee's condition will require the frequent visits of physicians. He has already incurred an indebtedness for such services in a considerable sum, owing one physician six or seven hundred dollars. Another physician who has been in attendance upon him must also have a considerable bill. The proper amount of damages is a question of much concern to us.

The courts have not laid down, and, as a matter of necessity, cannot fix a general rule for the awarding of damages for pain and suffering. The amount of damages must depend upon the circumstances of each particular case—that which would be excessive in one case would be wholly inadequate in another, and yet there must be a limit to the award for damages. It is our conclusion that in any event an award in any sum in excess of $25,000 would be excessive. If the appellee, within fifteen days, will enter a remittitur for $12,500, the judgment will be affirmed; otherwise, the judgment will be reversed and the cause remanded for a new trial.

SMITH, C. J., dissents.