HOT SPRINGS STREET RAILWAY COMPANY v. HILL.

4-5467                                    128 S. W. 2d 369

Opinion delivered May 15, 1939.

320

*Sydney S. Taylor* and *Martin, Wootton & Martin,* for appellant.

*Leo P. McLaughlin, Earl J. Lane* and *James R. Campbell,* for appellee.

MEHAFFY, J. The appellee, Juanita Hill, filed suit in the Garland circuit court against the appellant, Hot Springs Street Railway Company, to recover damages for personal injuries alleged to have been received as a result of the negligence of the appellant while it was engaged as a common carrier, operating motor buses over the streets of the city of Hot Springs, Arkansas. She alleged that she was a passenger on a bus operated by appellant, and while she was alighting from the bus, an employee of appellant negligently and carelessly attempted to close the door of the bus before she had gotten clear of same, and that the door struck her, knocked her to the pavement, causing permanent injuries. She prayed damages in the sum of $3,000.

The appellant filed answer denying each and every material allegation of the complaint.

The appellee testified in substance that she lived at 622½ Ouachita Avenue and was 18 years old; on the morning of September 9, 1938, she left her home to go to the Mexican Chiquita on the Little Rock Highway, where she was employed; she entered one of the buses of the appellant, which she thought was going north, and after the driver had gone a few feet he started turning and said "All aboard for south Hot Springs." She told the driver that she wanted to go to Park Avenue and he gave her a transfer; the bus turned near the filling station towards the Majestic Hotel; as she was leaving the bus she got to the ground and did not get entirely clear of the door and it hit her on the left shoulder; she went into the filling station and telephoned for her mother to come after her, and a man at the filling station took her home; when she got off the bus she fell and hopped into the station to use the phone; when she realized where she was she was sitting in the street; she looked down and her ankle was swollen; pains her all the time; cannot

turn the ankle and cannot put her weight on it; she weighs about 150 pounds, is five feet, ten inches tall; on the same morning she had X-ray pictures taken of her ankle and was treated by a physician from that time until the time of the trial; Dr. Wright placed her ankle in a cast on Monday, the injury having been received on Friday; the cast was on her ankle about a month and two weeks, then the upper half was removed; she was earning $10 to $12 a week; the injury happened about 10:45 a. m.; she went to the stop sign in front of the Rockafellow Hotel and the bus came by; the driver opened the door and she got on; the bus drove about 25 or 30 feet when it began turning; she was hurt about 15 feet from the filling station; got on the bus in front of the Rockafellow Hotel at the sign that was around the post; the bus went to about 15 feet of the filling station and made a turn, and she received her transfer; when she was told that she had the wrong bus, she received the transfer; there were four men on the bus including the driver; Frank Stauder stood up and appellee identified him as the driver; she did not know any other man on the bus; she was the only one that left the bus and when she stepped to the ground the driver pulled the door closed and did not give her time to get in the clear; when he closed the door it knocked her down; the bus was at that time moving on; fell on her right ankle and right hip and her heel went under her; the door struck her left shoulder and there were several bruises; the cast was put on her leg about a week after the accident; she has remained at home since the accident and her leg has been in a cast since it was first put there; pains her continuously; hurts mostly at night; she has not attempted to stand on her foot; massages it every day and tries to relieve the swelling; does not recall whether she made any outcry at the time; she was stunned.

The physicians testified about her injury and the extent of it, and that a bone in the heel was broken.

It is contended by the appellant that the evidence is not sufficient to sustain the verdict, and that the trial court should have directed a verdict for the appellant.

The witnesses for appellant testified that the injury did not occur as testified to by plaintiff.

In determining the sufficiency of the evidence to support a verdict, we must view the evidence with every reasonable inference arising therefrom in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict, it cannot be disturbed by this court.

If the evidence on the part of the appellee, although contradicted by evidence of the appellant, is of a substantial character, evidence that the jury could reasonably have believed, the case will not be reversed because of the insufficiency of the evidence, although this court may think that the verdict is against the preponderance of the evidence. *Missouri Pac. Rd. Co.* v. *Dotson,* 195 Ark. 286, 111 S. W. 2d 566; *Missouri Pac. Rd. Co.* v. *Hampton,* 195 Ark. 335, 112 S. W. 2d 428; *American Equitable Assurance Co. of N. Y.* v. *Showers,* 195 Ark. 521, 113 S. W. 2d 91; *Kansas City So. Ry. Co.* v. *Larsen,* 195 Ark. 808, 114 S. W. 2d 1081.

In a recent case this court said: " 'The great preponderance of the evidence appears to be that appellee was not injured in the manner testified by him, indeed, that he was not injured at the frog at all, and one of the grounds upon which we are asked to reverse this case is that the evidence shows that it was physically impossible for appellee to have been hurt in the manner testified to by him.' [*Missouri & N. A. R. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478]. In commenting upon the evidence above noted, the court said: 'We will not reverse the judgment because of the insufficiency of the evidence, for, as we view this evidence, it is not physically impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner.' " *Missouri Pac. Trans. Co.* v. *Sharp,* 194 Ark. 405, 108 S. W. 2d 579.

It is contended by the appellant in this case that the physical facts contradict the statement of the appellee, and that it was not physically possible for the appellee to have been injured in the manner testified to by her. There are no physical facts or natural laws that are in conflict

with her testimony. The evidence shows that the door hinged from the front and it is argued that when the car moved, after she had alighted, it moved from her and could not have hit her; but her testimony is that before she had time to get out of the way, the driver closed the door and in closing it, struck her and knocked her down. If she was immediately in front of the door and it was closed by the motorman, it could strike her whether it was hinged from the front or rear.

The facts in the case last cited are very similar to the facts in this case.

The appellant calls attention to, and relies on, the case of *St. Louis, S. W. Ry. Co.* v. *Ellenwood*, 123 Ark. 428, 185 S. W. 768. It quotes from said case as follows: "Appellate courts take notice of the unquestioned laws of nature, of mathematics, of mechanics and of physics, so, where there are undisputed facts shown in the evidence, and, by applying to them the well known laws of nature, or mathematics and the like, it is demonstrated beyond controversy that the verdict is based upon what is untrue and what cannot be true, this court will declare as a matter of law, that the testimony is not legally sufficient to warrant the verdict."

Immediately following the paragraph quoted by appellant from said case, is the following: "In the case at bar the conditions surrounding the plaintiff, as testified to by the defendant's witnesses, furnish a very strong argument against the credibility of his testimony, but this is as far as the record authorizes us to go. It can not be said that the testimony of the plaintiff is contradicted by the physical facts or is opposed to any unquestioned law of nature. His testimony related to matters, situations and conditions which might or might not have existed, and his right to recover depended wholly upon the truth or falsity of his testimony. His testimony was, therefore, evidence of a substantial character and if believed by the jury, was sufficient to warrant a recovery in this case."

The testimony of the appellee in this case is evidence of a substantial character, and if believed by the jury, was sufficient to warrant a recovery. It is argued, how-

ever, that there is no evidence of appellee's injury except her own testimony. If this were true, still her evidence, if believed, would be sufficient to warrant a recovery.

Appellant admits that appellee was injured on the morning she testifies she was injured, but it says that no one saw her, and that she made no outcry. These matters, of course, were proper to be considered by the jury in determining whether she was injured in the manner to which she testifies. Other persons may have seen the accident. Appellant says there were usually many persons on the front porch of the Majestic Hotel. If there were persons on that porch at the time of the accident, some of them may have seen her, but she would not know who, if any, saw the accident. Immediately after the injury she went to the filling station and the persons at the filling station did not see her when she came; but that she did go to the filling station is undisputed. The man operating the filling station heard her talking over the phone and went in and learned that she was trying to get some one to take her home; he took her home and said that she was apparently suffering pain, and that her ankle was swollen; he drove her home and helped her into her apartment.

Whether appellee was injured in the manner in which she claims to have been injured, was a question of fact for the jury, and if they believed her testimony, it was sufficient to support the verdict.

Appellant insists that the court should have directed a verdict for it, but it did not request the court to instruct the jury to find for it.

It is next contended by appellant that the verdict of the jury is excessive. While there was conflict in the evidence as to how appellee was injured, there is no conflict in the evidence as to the extent of the injury. The verdict was for $1,500. The appellee was 18 years old, and the undisputed evidence shows that she was employed, and earned from $10 to $12 a week. Dr. Thompson testified that he visited appellee in her apartment; that she was lying on her bed crying, suffering intense pain; he gave her something to relieve the pain, and found her ankle swollen considerably; he strapped it ad-

hesively, telephoned the nurse and had an ambulance carry her to Dr. Gray and had a picture made; it showed a piece of bone chipped off the heel bone, and said that any movement of the ankle would be very painful with this injury, and cause a sickening pain on account of the pulling of the bones. Dr. Nims testified that he made an X-ray picture of appellee's ankle, and there was a fracture and a tenderness, and evidence of sprain in the ankle, that a sprained ankle may produce anything from a slight pain and a little swelling for a few days to a tearing of the ligaments, where a person may be conscious of it for life; that after a severe strain the ligament is never as sure and snug-fitting as originally. A month later he made another X-ray picture and at that time she could use her foot so far as the bone was concerned; any pain that she experienced is the result of the sprain, the tearing of soft parts; it would be impossible for a break to occur without some displacement or tearing of the ligaments.

Dr. Wright testified that when he saw her on September 10th she was suffering from swelling of her right leg, discoloration, and considerable pain; she had bruises on her head, left shoulder and right hip; a fracture of a small bone of the heel. He told her not to put any weight on her foot; she had a good deal of pain and her ankle was swollen badly and discolored. The time of the recovery is problematical; the sprain will have to run its course; the process would not be complete until the patient is able to get out and walk and put the ankle to a considerable amount of weight-bearing; there is a possibility that the structure may be weak even though the line of the break has disappeared; he advised the appellee to stay off her feet because of the sprain to the tendon and ligaments.

The appellee testified about her pain and suffering, and the evidence showed that a cast was put on her leg and kept there for six weeks; she was still suffering and unable to walk, and as the physician testified, the extent of her injury is problematical. According to the physician's testimony, it may trouble her as long as she lives.

We think the evidence justified a verdict for $1,500. Under the evidence, it was a question for the jury, and the jury's verdict as to the amount of damages cannot be disturbed by this court, as excessive, if there is any substantial evidence to sustain the amount.

"The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are insusceptible of pecuniary admeasurement, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury, the exercise of which must be governed by the circumstances and be based on the evidence adduced, the controlling principle being that of securing to plaintiff a reasonable compensation for the injury which he has sustained." *Coca-Cola Bottling Co. of Ark.* v. *Adcox,* 189 Ark. 610, 74 S. W. 2d 771; 17 C. J. 869, *et seq.*

We find no error and the judgment is affirmed.