ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v.* HERNDON.

4-5496                                                   129 S. W. 2d 954

Opinion delivered June 5, 1939.

466

J. W. Jamison, Paul E. Gutensohn and Warner & Warner, for appellant.

Chastain & Chastain and Partain & Agee, for appellee.

MEHAFFY, J.   The appellee filed his complaint in the Crawford circuit court against the appellants, alleging that on November 27, 1937, while he was in the employ of a coal company and working near the company's plant

in Fort Smith, Arkansas, about nine o'clock p. m., in a boxcar on appellants' track, and while he was so working in the performance of his duties, he was, by and through the carelessness and negligence of appellants, their servants, agents and employees, seriously and permanently injured; that while he was engaged as above stated, one of appellants' locomotives approached on the track on which said car was standing; that said employees in charge of said locomotive knew that employees of the coal company were accustomed to work in cars on said track, and knew, or by the exercise of ordinary care should have known, that they were working in the car at the time, and notwithstanding such knowledge, the employees of appellants so carelessly and negligently moved and caused said locomotive and car to be moved as to strike the car in which appellee was working, suddenly, forcibly and violently, and without any signal or warning whatever of their intention to do so, thereby causing appellee to be thrown violently from the car in which he was working, and against some iron and other objects on the ground, and to be seriously and permanently injured. He then describes his injuries, and prays for judgment in the sum of $3,000.

Appellants answered denying all the material allegations of the complaint, and pleaded specifically that appellee's injuries, if any, were caused by his own negligence and failure to exercise ordinary and reasonable care for his own safety.

There was a trial, verdict and judgment for $500 and the case is here on appeal.

Teddy B. Herndon, the appellee, testified in substance that he lived in Fort Smith, Arkansas, and was injured while in the employ of a coal company; he went to work in the car where the coal comes out of the car in two-inch squares; it comes out on a conveyor and it was appellee's duty to shovel the coal back into each end of the car; about 25 or 30 tons was put in each car; he went to work at seven o'clock in the evening, and there was some coal already in the car, about two feet deep; about 9:30 or 9:45 he had the car filled up about four feet in the end; was shoveling coal each way and could not hear

anything in the car unless someone called loudly; he was in there shoveling coal and something hit the car and knocked him out on the ground; he hit on his shoulder and back and was bruised, and for a second he was addled; he looked to see how far he was from the car, and saw the engine going up the track; he then went to where Buell Collins was and said something to him; does not remember what he said; the machinery was making so much noise; he did not think he was hurt badly at the time, and went back to get a drink of water, and when he went back to the car the coal was running out on each side; when he started to get into the car, a catch came into his arm; he turned and went into the boiler room and stayed there until about three o'clock; does not think anybody was in the boiler room except Buell Collins; was not outside near the boxcar, nor were any of the other employees working there at that time in the vicinity of the boxcar; after three o'clock he went to a grocery store on third and G streets to get some liniment and iodine; then doctored his shoulder and went to bed at home; did not go back to work for the coal company after that day, and has not worked for them since; his shoulder was in such shape that he could not work; worked a half-day for the O. K. Transfer & Storage Company, but his shoulder bothered him so that he could not handle the job; is not working now; has worked part of the time at a pool hall; muscles and back and shoulder are injured; could not raise his arm nor pick up a load of any more than 30 or 40 pounds, and when he does that for a short time, it gets weak; hurt his back when he fell on that shoulder against that tin, which is about 2½ feet high in the door; his only treatment was what his mother did for him; did not have a doctor; was earning 30 cents an hour at the time of the accident, and averaged $2.40 a day; remained in bed after the accident about five days, and still suffers from the injury; when he lifts a load or uses his arm, it swells up and he cannot raise it; cannot sleep at night and cannot pick up anything and put it over his head; cannot put his arm over his head with any weight at all; the conveyor comes out south from the coal company and is in a trough shape; it is built in an angle

shape about 25 feet high and the coal comes down this angle down the conveyor, which carries it down to the boxcar; conveyor sets some six inches from the top of the door to the boxcar; the coal drops off the conveyor into the boxcar; it knocked him unconscious for a short time; after he had fallen to the ground he observed an oil tank car on the track spotted to the north end of his car; appellee is 23 years old.

On cross-examination appellee stated in substance that he fixed the date, November 27, because on the 28th a lady had some property stored in the attic of his mother's home, and that was the next morning after the accident; the accident happened between 9:30 and 9:45; does not remember when he first began working for the coal company in November; they came after him, put him in a coal car previously occupied by Reed Mullins; had a scoop shovel to work with, and there were about four-feet of brickettes at the door and higher on each end; it was filled to the top of these grain doors; had done that kind of work before, but had never been in a boxcar when a switch engine moved in; the conveyor is about 75 feet long, constructed of iron, and has two wheels about five feet from the lower end which is the end that picks up the brickettes; would not know for sure what struck the car except that another car was on the same track, and something knocked him out of the car; the engine was up at the far end of the plant about 400 or 500 feet from where appellee was when he regained consciousness; the car appellee was in moved three or three and a half feet when it was struck; knocked him out on the east side of the car on his shoulder and back; the conveyor that piled the brickettes into the car is pretty heavy; it is operated by an electric motor and on one side there is a chain that pulls a bell; the conveyor was not damaged in any manner and not placed in a different position; it was at the south end of the door, and lacked about four or five inches being at the door at the south end; when he got up the conveyor was up against the other side of the door; did not see anybody on the east side of the track after the accident; did not see any switchman; talked to Buell Cowan after the accident; told Cowan he got knocked out of the

car and that it hurt his shoulder; does not know why he did not tell Cowan that he had been cut and bruised; did not have first aid treatment at the plant; did not tell Elmer Smith, the superintendent, that he had been hurt; witness did not know whether the car or engine struck the car he was in, but one or the other struck it; the tank car was up against the car he was in, but does not know whether it was attached or not; did not see the switchman to make any complaint that night, and did not make any complaint to the Frisco after the accident or before he filed suit; did not make any claim against anyone until suit was filed; went in and told Buell Cowan that he had been knocked out of a boxcar; then went out to the boxcar and the coal was about four feet high in the doorway and slightly higher in each end of the car; shoveled the brickettes back to each end of the car until they got full and then let the conveyor run until it filled up the doors; did not use a shovel after the accident; quit at three o'clock in the morning; did not talk to anyone before he left at three o'clock; went to a store run by Leslie Scott on G Street to get some Iodine and liniment; got him out of bed and did not pay for the medicine, but it was charged; was skinned on his shoulder and the liniment was put on the muscles of his arm; did not go back to the coal plant to show anybody his bruises, and did not show it to anybody connected to the Frisco; worked in a pool hall of Arthur Newman after the accident; Newman also operates a beer joint and barber shop; appellee made $5 a week and worked for him five weeks.

Appellee's testimony about the purchase of the liniment and iodine from Scott at three o'clock in the morning is corroborated by Scott; and also Ella Kline testified that she saw appellee in the early morning when he came to Scott's store.

Sarah Herndon, mother of appellee, testified that he came home about three o'clock in the morning after the night of November 27th; came to her bed and told her he was hurt; she took the liniment and doctored his side and arm and shoulder; then he went to bed and afterwards went to see a doctor and the doctor would not treat him because he had no money; he stayed in bed a week

or maybe longer; she doctored him all the time as best she could until he was able to get up; has not been able to do any work since that time; he complained of his injury, and does yet, at times; he has not worked since the accident and cannot do any hard work on account of his shoulder and arm.

Appellee's testimony was also corroborated by the testimony of Florence Dunn. She testified in substance that she was hired by Mrs. Herndon and lived there at her home in 1937; that she knows Teddy Herndon and that he came in on November 27th, about three or four o'clock; his shoulder was bruised and skinned pretty bad; that they bathed him and took care of him the best they could; that he was confined to his bed off and on for a week or more.

The witnesses for appellants contradict the testimony of appellee and his witnesses. Among other things they testify that the plant was not operating on November 27th, and that appellee worked on the 29th of November. Quite a lot of their testimony is to the effect that appellee made no complaint to any of the officers or agents of appellants, or the coal company for whom he was working. This, however, was all testified to by the appellee himself.

It is earnestly insisted that the evidence is not sufficient to support the verdict. Appellants cite and rely on cases which hold that a jury's verdict cannot be predicated upon conjecture or speculation. There is no conjecture or speculation in this case, but it is a question of whether there is any substantial evidence to support the verdict.

In determining the sufficiency of the evidence to support a verdict, under the well established rules of this court we must view the evidence with every reasonable inference arising therefrom in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict, it cannot be disturbed by this court. If the evidence on the part of the appellee, although contradicted by evidence of the appellants, is of a substantial character, evidence that the jury could reasonably have believed, the case will not be reversed be-

cause of the insufficiency of the evidence, although this court might think the verdict is against the preponderance of the evidence. *Hot Springs Street Railway Co.* v. *Hill, ante* p. 319, 128 S. W. 2d 369; *Missouri P. Rd. Co.* v. *Dotson,* 195 Ark. 286, 111 S. W. 2d 566; *Missouri P. Rd. Co.* v. *Hampton,* 195 Ark. 335, 112 S. W. 2d 428; *American Equitable Assurance Co. of N. Y.* v. *Showers,* 195 Ark. 521, 113 S. W. 2d 91; *Kansas ·C. S. Ry. Co.* v. *Larsen,* 195 Ark. 808, 114 S. W. 2d 1081.

This court said, in the case of *St. Louis, S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428, 185 S. W. 768, in an opinion written by the late Chief Justice HART: "In the case at bar the conditions surrounding the plaintiff, as testified to by the defendant's witnesses, furnish a very strong argument against the credibility of his testimony, but this is as far as the record authorizes us to go. It cannot be said that the testimony of the plaintiff is contradicted by the physical facts or is opposed to any unquestioned law of nature. His testimony related to matters, situations and conditions which might or might not have existed, and his right to recover depended wholly upon the truth or falsity of his testimony. His testimony was, therefore, evidence of a substantial character and if believed by the jury, was sufficient to warrant a recovery in this case."

In the case of *Missouri & N. A. Rd. Co.* v. *Johnson,* 115 Ark. 448, 171 S. W. 478, this court said: "We will not reverse the judgment because of the insufficiency of the evidence, for, as we view this evidence, it is not physically impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner."

The late Justice BUTLER, speaking for this court, said: " 'The great preponderance of the evidence appears to be that appellee was not injured in the manner testified by him, indeed, that he was not injured at the frog at all, and one of the grounds upon which we are asked to reverse this case is that the evidence shows that it was physically impossible for appellee to have been hurt in the manner testified to by him." *Mo. Pac. Trans. Co.* v. *Sharp,* 194 Ark. 405, 108 S. W. 2d 579.

In the same case it was also said: "At any rate, the jury and trial court had the benefit of the presence of the witnesses and saw their demeanor upon the witness stand and the jury has accepted the testimony of the appellee as true."

Appellants contend, however, that the evidence of appellee is contradicted by the physical facts, and it is argued that if the car had moved at all, or if it had moved the distance testified to by appellee, it would have broken and injured the conveyor. The appellants say that the door of the car was between five and six feet wide, and the conveyor about two feet wide. Even if the conveyor was at right angles with the car, the moving of the car three feet would not necessarily injure the conveyor, and there is no evidence that it was at right angles. If the conveyor had gone into the car, not at right angles but from the rear, it is plain the car might have moved a considerable distance without injury to the conveyor, and the evidence of appellee, which is undisputed, shows that the conveyor was on one side of the car door before the accident, and was on the other side of the door after the accident.

It is also contended that if the car was struck as appellee testifies, it could not have knocked him out of the door. Of course, this would depend on a number of things. He might have struck either the coal or the side of the car and been knocked back and out of the door; but it is said that knocking a car three or four feet would not knock a person down. One witness of appellants said that the car would have to be knocked five car lengths in order to knock a person down. However, all these were questions for the jury. It is argued by appellants that gross preponderance of the evidence, which indicates an unreasoning passion or prejudice on the part of the jury, or misapprehension of the law, or disregard of the legitimate sphere of their action, and such as to shock a sense of justice, will justify this court in setting aside the verdict. The authorities cited in support of this argument have no application to this case.

This court has many times held that the trial court has a right to set aside a verdict when he thinks that the

verdict is against the preponderance of the evidence; but this court does not have the right to set aside a verdict simply because it appears to be against the preponderance of the evidence. The twelve jurors and the trial judge have an opportunity to see the witnesses, observe their demeanor on the stand, and are better able to arrive at the truth than this court, which simply has the printed record, and knows nothing about the witnesses, their apparent candor, their demeanor on the witness stand, and their willingness or unwillingness to testify. The jurors are required by law to be of good character, approved integrity, sound judgment and reasonable information, and the circuit judge, of course, must be learned in the law. Because they have an opportunity to hear the witnesses testify and observe their demeanor, their verdict, if there is any substantial evidence to sustain it, cannot be disturbed by this court.

It is next contended by the appellants that the court erred in giving appellee's instruction No. 2, which reads as follows: "You are instructed that the defendant railroad company owed a duty to the plaintiff of using ordinary care in protecting him and preventing injury to him if he was in one of its cars on a switching track, and if you should find from a preponderance of the evidence that it failed to exercise ordinary care to give notice that a coupling would be made with any such car and the plaintiff was in same in the discharge of his duties of assisting in loading same for the Brickette Company, and you further find that the plaintiff was injured thereby, then such action, if it existed, would constitute negligence on the part of the defendants."

Appellants' argument is that the instruction has no reference to the evidence. We do not agree with appellants in this contention. We think the instruction was a correct declaration of the law, and the court did not err in giving it.

Reading the evidence and the instruction will show clearly that the instruction is not abstract or misleading, and that it has reference to the evidence introduced.

Objection is made to the court's giving instruction No. 3 requested by appellee. The objection to this in-

struction is that it assumed the existence of facts that were not proved. The instruction is very long, but it tells the jury in effect that if they find from a preponderance of the evidence that the appellee was in the employ of the coal company and engaged in loading and moving brickettes in a box car, and if they further find from a preponderance of the evidence that while he was working in the performance of his duties, and while in the exercise of ordinary care for his own safety, a locomotive of appellants approached on the track on which the car was standing, in charge of the employees of appellants, and if they further found from a preponderance of the evidence that the employees of the appellants in charge of the movement of said locomotive carelessly and negligently moved same and car attached thereto so as to strike the car in which appellee was working with such force as to cause appellee to be thrown from the car and injured, without any signal or warning, and if they further find from a preponderance of the evidence that such action of appellants, if it existed, was negligent, and further find that if there was such negligence and that it was the proximate cause of appellee's injury, then the verdict should be for the plaintiff against the defendant, unless they found that plaintiff was guilty of contributory negligence. There does not seem to be any error in the court's giving this instruction.

It is finally contended that the damages are excessive. The judgment in a personal injury case should be for such an amount as would compensate the injured party for his physical injuries, including pain and suffering.

"The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability

as he has sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are insusceptible of pecuniary admeasurements, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury, the exercise of which may be governed by the circumstances and be based on the evidence adduced, the controlling principle being that of securing to plaintiff a reasonable compensation for the injury which he has sustained." 17 C. J. 869 *et seq. Coca-Cola Bottling Co. of Ark.* v. *Adcox,* 189 Ark. .610, 74 S. W. 2d 771.

Under the rule for measuring damages in a personal injury case, we cannot say that $500 is excessive.

We find no error, and the judgment is affirmed.