Edith KEENE and Wallis Keene,
Plaintiffs,

v.

GEORGE ENTERPRISES, Inc., d/b/a
Jimmie Lynch Death Dodgers,
Defendant.

Emilie MILNER and M. B. Milner,
Plaintiffs,

v.

GEORGE ENTERPRISES, Inc., d/b/a
Jimmie Lynch Death Dodgers,
Defendant.

Civ. A. Nos. 737, 738.

United States District Court
W. D. Arkansas, El Dorado Division.

Nov. 2, 1956.

**642**

Wright, Harrison, Lindsey & Upton, Little Rock, Ark., Joe Stamper, Antlers, Okl., for plaintiffs.

Mahony & Yocum, El Dorado, Ark., L. B. Smead, Camden, Ark., for defendant.

JOHN E. MILLER, District Judge.

This case was tried to the Court without a jury on October 10 and 11, 1956, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs from the parties in support of their respective contentions. The briefs have been received, and the Court, having considered the pleadings, evidence, stipulations, and briefs of the parties, now makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

**1.**

The plaintiffs, Edith Keene and Wallis Keene, are citizens and residents of the State of Texas, and the plaintiffs, Emilie Milner and M. B. Milner, are citizens and residents of the State of Oklahoma. The defendant, George Enterprises, Inc., d/b/a Jimmie Lynch Death Dodgers, is an Ohio corporation. The amount involved, exclusive of interest and costs, exceeds the sum of $3,000.

**2.**

On June 13, 1956, at approximately 8:30 a. m., the plaintiff, Wallis Keene, was driving a 1956 Buick in a westerly direction on U. S. Highway 82 at a point about two miles west of the town of Montrose, Arkansas. Mr. Keene's wife, Edith Keene, and his sister, Mrs. Milner, were riding with him in the automobile which was owned by the plaintiff, M. B. Milner. Mr. and Mrs. Keene and Mrs. Milner had been to Lake Providence, Louisiana, to attend a funeral and they were returning to the Keenes' home in Wiley, Texas, on the morning in question. They were using Mr. Milner's car since it was air conditioned, while Keene's car was not.

It was raining, but visibility was good. The highway was what is generally known as a "black top" highway.

**3.**

On the same morning defendant's employee, Bobby Pittman, was driving defendant's 1956 Dodge in an easterly direction on U. S. Highway 82. This Dodge automobile was a part of a convoy which included several trucks and automobiles owned by the defendant. Pittman's position in the convoy was behind a pickup truck owned by defendant, and defendant's drivers had been instructed to keep at a distance of 300 feet apart when traveling.

**4.**

Shortly before the accident Keene was driving the Buick automobile at a speed of approximately 55 to 60 miles per hour. As he approached a "Y" he noticed a black Chevrolet coming from the opposite direction on Highway 82. Highway 82, in the direction Keene was going, curved to the left as it intersected with the old highway which ran in an easterly direction to and through the town of Montrose. Keene noticed that the black Chevrolet was slowing down, and he thought that the driver might be preparing to turn across in front of him and into the old highway going into Montrose. Keene slowed the Buick automobile to a very slow speed, but then seeing that the driver of the Chevrolet was apparently waiting for him, Keene

continued on and had reached a speed of 30 to 35 miles per hour when the defendant's Dodge automobile suddenly came out from behind the Chevrolet and directly into Keene's lane of travel. Keene applied his brakes but was unable to stop in time to avoid colliding head-on with defendant's automobile.

5.

Immediately prior to the accident defendant's driver, Bobby Pittman, was driving defendant's Dodge at a speed of approximately 45 miles per hour. He had been following behind defendant's pickup in the convoy, but about a mile and a half before reaching the scene of the accident, the black Chevrolet mentioned in Finding of Fact No. 4 had pulled out of a side road and was proceeding in front of the Dodge being driven by Pittman.

As Pittman approached the "Y" he was following about 100 feet behind the Chevrolet and was driving at a speed of approximately 45 miles per hour. When the Chevrolet slowed down, Pittman applied his brakes and the Dodge he was driving skidded to the left on the wet pavement. When Pittman saw the Buick coming toward him, he attempted to drive on across the highway and onto the north shoulder, but, as heretofore stated, the Dodge and Buick collided head-on in the north lane of the highway. Defendant's Dodge was traveling at an angle across the highway, and the primary point of impact occurred between the right front of defendant's Dodge and the right front of plaintiff's Buick. The collision occurred about 300 feet west of the "Y". Plaintiffs' automobile had already gone around the curve, and the collision occurred on a straight stretch of highway.

After the impact defendant's Dodge was still upright and was at an angle, with the right rear wheel still on the pavement and most of the vehicle on the north shoulder. Plaintiff's Buick also remained upright and was on the pavement in the north lane of the highway, sitting at an angle with the front end toward the north shoulder.

6.

After the collision Keene went around to the other side of the Buick and helped his sister, Mrs. Milner, out of the car. She was stunned and lay down on the pavement. Her face and mouth were bleeding profusely. Mrs. Keene, who had been riding in the middle, attempted to get out of the car but was unable to do so because of her leg. Her nose and mouth were also bleeding. It was about 45 minutes before the ambulance arrived to take Mrs. Keene and Mrs. Milner to the infirmary at Lake Village.

7.

Mrs. Keene remained in the infirmary until the next day when she was taken to a hospital in Little Rock. She had a comminuted fracture of the right leg below the knee, with some of the fracture lines running into the knee joint. The break was set without surgery and a cast applied to her leg. She remained in the hospital until June 19, when she returned to her home in Wiley, Texas.

Mrs. Keene wore the cast for seven weeks. Until September 1, she used two crutches to walk, and then for a short time she used one crutch and a cane. At the time of the trial she was using only a cane. As a result of the fracture, she now has a limitation of motion in her right knee, as well as a four percent lateral rotation of the lower part of her right leg. In addition, her right leg is one-fourth inch shorter than her left leg, and there has been a considerable amount of atrophy of the muscles of her right leg.

In addition to the substantial pain she suffered in connection with the fractured leg, she has also had some back pain as a result of using the crutches. Mrs. Keene is 42 years of age, and she will have some permanent partial disability to her right leg as a result of the fracture.

**8.**

Mrs. Milner remained in the hospital about ten days. She had numerous cuts, scratches, and bruises as a result of the collision, and several of the cuts and bruises required stitches.

After returning home she spent about two weeks in bed and another two weeks in which she stayed in bed a good part of the time. She had been the owner and manager of a Ben Franklin Variety Store, and she was unable to do that work.

Mrs. Milner's injuries included a deviated nasal septum, the fracture of four, and perhaps six, ribs, an injury to her left foot, injury to at least two teeth, and several cuts or bruises on her face and in her mouth.

As a result of the cuts or bruises on her face, she has a large scar across her right cheek, a large scar under her chin, and a small scar near her right eye. At the time of the trial the right cheek immediately above the scar and under her eye was swollen or puffed up considerably. This part of her face was tender, and she was unable to wear ordinary glasses because they caused irritation.

Mrs. Milner has had a great deal of pain with her injuries, and she is particularly sensitive about the scars on her face. She is 51 years of age, and while the scars on her face may improve some, they are permanent and detract substantially from her appearance.

**9.**

Mr. Keene received no serious injuries in the collision, but his legs were badly bruised and his right arm was slightly cut. He had difficulty walking for about a week and had some pain for approximately two weeks.

He has expended approximately $900 as a result of his wife's injuries, and he has been deprived of her services and companionship for a considerable period of time.

**10.**

The damage to Mr. Milner's automobile was stipulated to be $1,650. Mr. Milner has been required to expend approximately $800 as a result of his wife's injuries, and has been deprived of her services and companionship for a substantial period of time.

### Discussion

The defendant contends that its driver, Bobby Pittman, was not guilty of negligence, and that the plaintiff, Wallis Keene, was guilty of negligence. In the alternative defendant contends that if its driver was negligent, that Mr. Keene was also negligent and that plaintiffs, who were engaged in a joint venture, could not recover their full damages because of the Arkansas Comparative Negligence Statute.

More specifically, defendant contends that Bobby Pittman was confronted with an emergency, created by the black Chevrolet which was traveling in front of Pittman, and that he exercised ordinary care under the circumstances. It is true that under the Arkansas law "when a person is confronted with a sudden emergency created by the negligence of another, the course of conduct adopted is to be measured by what the ordinary prudent man would do in an emergency, rather than what he might do on more mature deliberation." Rowe v. Dickerson, Ark., 295 S.W.2d 305, 306.

However, if a person's own negligence creates the emergency, then the emergency rule does not operate in his favor. Waycaster v. Sorenson, D.C.W.D.Ark., 124 F.Supp. 892, 899; Kisor v. Tulsa Rendering Co., D.C.W.D.Ark., 113 F. Supp. 10, 17, and cases therein cited.

Under the Arkansas law it is the duty of a person operating a motor vehicle to keep a lookout for vehicles rightfully upon the highway, and to exercise ordinary care to keep his vehicle under such control as to be able to check the speed or stop it, if necessary, to avoid injury to others if and when danger is apparent; and it is further provided in Section 75–614, Ark.Stats., that the driver of a motor vehicle shall not follow another vehicle more closely than is rea-

sonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway. Waycaster v. Sorenson, supra, at pages 898–899 of 124 F.Supp.

In the instant case it is clear from the evidence that defendant's driver, Bobby Pittman, was following too closely behind the black Chevrolet, failed to keep a proper lookout, and failed to keep the Dodge automobile under reasonable control. This action on his part amounted to negligence which was a proximate cause of the collision and injuries sustained by plaintiffs.

There is no evidence whatsoever to support defendant's contention that the plaintiff, Wallis Keene, was guilty of contributory negligence. Mr. Keene was driving at a reasonable rate of speed on his own right-hand side of the highway, and was certainly acting as an ordinary prudent person would have acted under the same circumstances. He had no reason to expect defendant's automobile to suddenly enter his lane of traffic, and when that happened Keene had no opportunity whatsoever to avoid the collision. Under these circumstances it cannot be said that Keene was guilty of any negligence.

Since Keene was not guilty of negligence, the Arkansas Comparative Negligence Statute, Ark.Stats. §§ 27–1742.1, 27–1742.2, has no application in this case. By the same token, it is unnecessary for the Court to decide whether plaintiffs were engaged in a joint venture.

It may be, of course, that the driver of the black Chevrolet was also guilty of negligence which may have concurred with the negligence of defendant's driver, Bobby Pittman. That is entirely immaterial, however, because in such circumstances the plaintiffs would have the right to bring an action against either of the joint tort-feasors.

In accordance with the above, plaintiffs are entitled to recover the damages they sustained as a proximate result of the negligence of defendant's driver. In Kisor v. Tulsa Rendering Co., supra, the court at page 19 of 113 F.Supp. said:

"The rule of damages applicable to personal injuries is stated in Coca-Cola Bottling Co. of Arkansas v. Adcox, 189 Ark. 610, at page 613, 74 S.W.2d 771, at page 772, as follows:

"'The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary admeasurement'.

"See also, Hot Springs Street Railway Company v. Hill, 198 Ark. 319, 128 S.W.2d 369; St. Louis-San Francisco Railway Co. v. Herndon, 198 Ark. 465, 129 S.W.2d 954."

A husband is entitled to recover medical and related expenses he incurs as a result of his wife's injuries, and for the loss of his wife's services and companionship. Little Rock Gas & Fuel Co. v. Coppedge, 116 Ark. 334, 348, 172 S.W. 885. And, of course, the measure of recovery for damages to an automobile is the difference in the fair market value thereof immediately before and immediately after the collision.

In the instant case Mrs. Keene suffered substantial injuries, the primary one being the fracture of her right

leg. She has some permanent partial disability, and a consideration of all the evidence convinces the Court that her damages should be assessed at the sum of $12,000.

 Mrs. Milner also suffered substantial injuries. It is probable that she will have a complete recovery with the exception of her teeth, deviated nasal septum, and the scars on her face. The scars will be permanent, and the disfigurement caused thereby is probably the most serious part of her injuries. The Court has concluded that her damages should be assessed at the sum of $9,500.

As stated in the Findings of Fact, Mr. Keene has been required to expend approximately $900 as a result of his wife's injuries, and has been deprived of her services and companionship for a considerable period of time. He also received some personal injuries. His damages should be assessed at the sum of $2,500.

The damage to Mr. Milner's automobile was stipulated to be $1,650. He has been required to expend approximately $800 as a result of his wife's injuries and has been deprived of her services and companionship for a substantial period of time. His damages should be set at the sum of $3,000.

### Conclusions of Law

**1.**

The Court has jurisdiction of the parties to and the subject matter of this action.

**2.**

The defendant's driver, Bobby Pittman, was guilty of negligence which was a proximate cause of the collision and injuries sustained by the plaintiffs.

**3.**

The plaintiff, Wallis Keene, was not guilty of contributory negligence.

**4.**

The plaintiffs are entitled to recover of and from the defendant the following amounts: Edith Keene, $12,000; Wallis Keene, $2,500; Emilie Milner, $9,500; M. B. Milner, $3,000.

A judgment in accordance with the above should be entered.