ALEXANDER *v.* BOTKINS.

5-1999                               329 S. W. 2d 530

Opinion delivered December 14, 1959.

*Harrison & Harrison, Omar Green* and *Graham Partlow, Jr.,* for appellant.

*Henry J. Swift* and *Bruce Ivy,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from a judgment entered in favor of Ina Ray Botkins, Administratrix, and Ina Ray Botkins, Individually, in the Circuit Court of Mississippi County, Osceola District. The jury found appellant, Betty Alexander, guilty of negligence (100%) and awarded appellee, as administratrix, $10,000 for the use and benefit of the estate of Johnny S. Botkins, deceased; awarded $25,000 for the use and benefit of the widow for loss of contributions, support, and maintenance, $15,000 for Ina Ray Botkins, individually, for loss of consortium, and $13,000 for personal injuries sustained. For reversal of the judgment, it is first asserted that the verdict and judgment are contrary to the law and the evidence, second, that the verdict is excessive, and third, that the court erred in permitting the deposition of Dr. H. K. Baldridge to be read in evidence.

We see no need to detail all of the evidence, since we are only concerned with whether there was substantial evidence to support the verdict of the jury. As stated in *Hot Springs Street Railway Company* v. *Hill,* 198 Ark. 319, 128 S. W. 2d 369:

"In determining the sufficiency of the evidence to support a verdict, the Supreme Court views it with every reasonable inference arising therefrom in the light most favorable to the Appellee, and if there be any substantial evidence to support the verdict, it will not be disturbed **on appeal.**"

Accordingly, though appellants[1] presented evidence which, if believed by the jury, would have justified a verdict for them, we are here only concerned with whether the evidence offered by appellee was of a substantial nature, sufficient to support a finding that the collision was the result of negligence on the part of Mrs. Alexander, rather than the result of negligent acts on the part of Johnny Botkins (Botkins died as a result of the collision).

Appellant, Betty Alexander, traveling north on state road No. 77, in attempting to make a left turn on to a county dirt road, was struck by a truck operated by Botkins, who, traveling in the same direction as appellant, was in the act of passing. Mrs. Alexander testified that she gave no arm signal, but did turn on the signal light for a left turn; that the light was apparently working . . . she was traveling about 10 or 15 miles per hour when she started the turn. **She further testi**fied that the turn was gradual . . . that no horn was blown by the truck before it started by . . . that she had already observed the truck some distance behind her . . . she gave a signal about 300 feet before the turn . . . but never glanced back after giving the signal. Testimony was offered by other witnesses to the effect that they heard no horn blow. However, appellee offered evidence that the automobile driven by Mrs. Alexander left skidmarks. A deputy sheriff of Mississippi County testified that he stepped off 18 feet of skidmarks left by the Alexander car, beginning in her right lane of traffic, extending across the center line, and into the left lane of traffic, which was being traveled by the Botkins truck. The evidence as to skidmarks was corroborated by Dewey Neely and H. M. Pendergrass, the latter the driver of the ambulance which went to the scene. Mrs. Alexander was unable to state that the signal lights were functioning at the rear, and the testimony showed that these lights were not operating after

---

[1] The original complaint was filed by Betty Alexander and husband, W. J. Alexander, seeking judgment because of damages to their automobile. By amended complaint, Betty Alexander sought damages for alleged personal injuries. Appellee cross-complained, and also filed separate suit. The suits were consolidated for trial.

the collision, though the brake lights were working. According to evidence, there was no damage to the rear of the automobile. A bread truck driver behind the Botkins truck testified that he saw no blinking lights on the Alexander car at the time the truck pulled out to pass. Evidence also indicated that partial obstructions obscured the dirt road. Botkins was a stranger in the community, and without knowledge of the location of this road. Appellee testified that her husband blew the horn, pulled over to the left lane preparatory to passing, and that Mrs. Alexander, without giving any signal of any kind, suddenly turned to the left in front of the truck. While, as stated, the testimony was conflicting, there was ample evidence upon which the jury could find that Mrs. Alexander was operating her vehicle in a negligent manner, and that the collision resulted therefrom.

The jury awarded for the benefit and use of Mrs. Botkins as widow $25,000 for loss of contributions, support and maintenance. Mr. Botkins was 40 years of age at the time of death, and the parties stipulated that he had a life expectancy of 31 years. Appellee testified that his earnings averaged between $2,000 and $3,000 per year; that he was healthy, strong, and able-bodied. We cannot say that this award was excessive.

$10,000 was awarded for the use and benefit of the estate of Johnny Botkins. Mrs. Botkins testified that after the collision, she heard her husband calling her, ran to him, and he grasped her hand. Botkins was still alive when the ambulance reached the hospital in Osceola. Testimony reflected that the truck was worth approximately $600 before the accident, and brought only $150 as salvage. Funeral expenses amounted to $722.84, and the hospital bill for deceased was $25. Of course, there is no way to determine the amount of pain and suffering experienced by the deceased; it is likewise difficult to determine a proper pecuniary award for pain and suffering. Any reduction of this award would have to be based upon a guess, which would amount to no more than substituting our judg-

ment for that of the jury. Certainly, the amount is not so large as to "shock the conscience of the Court"; nor is there indication that the verdict was a result of "passion or prejudice". In fact, appellee and her husband were strangers to Mississippi County, while appellants were residents of that county, and if prejudice were to enter into the picture, it would certainly be logical to assume that local residents would be favored, in preference to outsiders. We are unable to say that this amount was excessive.

The jury gave appellee $15,000 for loss of consortium. Here we have a recent precedent. In *Mo-Pac Transportation Co.* v. *Miller,* 227 Ark. 351, 299 S. W. 2d 41, we allowed a recovery of $15,000 for loss of consortium. In that case, there was no total loss of companionship, for Mr. Miller did not lose his life as a result of the injuries sustained. This item of recovery is not dependent upon the income of the deceased or the beneficiary's loss of support, for all happily married persons enjoy the comfort, society, and affection of their spouse, irrespective of financial status. This loss is as poignant to one of meager circumstances as to one who is amply provided with the luxuries of life. We do not find this award excessive.

The jury awarded appellee $13,000 for injuries sustained by her. According to the evidence, her expenditures for medical expenses amounted to $1,825. Dr. H. K. Baldridge, a physician of Heber Springs, testified that Mrs. Botkins suffered the following injuries: Multiple lacerations of the face; a fracture of her nose, contusions and abrasions over a great part of her body, and a particularly severe bruise on the right leg which limited her walking considerably; a cerebral and spinal concussion; a fracture compounded of the left nasal bone; deep laceration of the upper and lower lip; laceration of the right calf with contusion, a large contusion underneath; laceration of the right knee, left forearm, and left hand; sprain of the left suprespinatus muscle and tendon; contusion of the left anterior chest and left upper lobe of the lung anteriorly; contusion of the right

knee and right calf muscle with deep hematoma; and multiple minor abrasions, contusions and sprains. The doctor testified:

"I saw her in the hospital, as an in-patient, I saw her twice a day, sometimes more. I try not to see them any less. The 10th of October 1957 through the 14th of October 1957, in the hospital; then in the clinic, I have seen her apparently about 19 times."

This covered the period from October 9th, 1957, to June 16th, 1958. Dr. Baldridge testified that appellee's left shoulder was still damaged, but that it should improve over a period of two or three years from the time of injury. He was unwilling to state whether she would have a complete recovery from this injury. Relative to her right leg, the doctor testified:

"She had a crushing injury to her right calf muscles, the lower part of it. Specifically it is, I believe, the gastrocnemius muscle and other structures. She had a large hematoma in that injury. That is, she had a large amount of blood out into the tissue. This limited her from walking at the time and it improved some, for a time, and then, recently, it is getting worse and I don't know whether, I can't determine at this time, whether it is going to continue to be worse or better."

Further:

"Now, Doctor, you say this injury to her right leg and to the calf of the right leg; is there a marked scar there now?

A. Oh, yes.

Q. What is the appearance of the scar?

A. Well, it is a defect; it is a hollowed out place and it is dark.

Q. Discolored?

A. Yes, discolored.

Q. Has this given you a lot of concern recently?

A. Well, yes, it concerned me enough that I sent her to an orthopedic specialist for examination."

Further:

"I expressed the opinion once before that she had 20% disability of that leg; probably that would be 25% now. That was April 1, and, since that time, this has become worse."

He further testified that Mrs. Botkins was not able to do any work.

Dr. Richard N. Logue, an orthopedic surgeon of Little Rock, testified that, in his opinion, Mrs. Botkins had suffered a permanent disability as far as the injury to the right leg was concerned. In describing an operation performed, Dr. Logue testified:

"I excised the scar completely which measured about an inch and a half in circumference with two or three radiating lines and found the fat and tissue under the skin to be adhered or stuck to the covering of the muscle which was in itself scarred, this scarring throughout the medial side of the muscle. I opened the facis over the muscle to examine this and determined that any attempt to repair it would probably not be, no result in any great improvement, so I excised the scar completely and did a plastic revision so that she will end up with a curved, not too unsightly scar. In other words, the leg will look better than it did before and the painful neuroma which was contained in this scar is now gone."

Further:

"The superficial branch of the saphenous nerve was involved and I merely excised the area of the scar and she will have some numbness which probably will reduce with the passage of time from the incision down towards the inner side of her ankle."

The doctor testified there was damage to the nerve that could not be repaired, in addition to permanent damage to the muscle of the leg. We are of the opinion that the evidence justified the award given.

Appellants contend that the court erred in permitting the use of the deposition of Dr. Baldridge because

the provisions of § 28-352, Ark. Stats. Anno. (47), were not complied with.[2] The Caption, Stipulation and Agreement, of the deposition provides:

"The parties hereto waive all formalities in the taking, transcribing and forwarding said deposition, and the signature of the witness is also waived. The right to object to said deposition for **incompetency, irrelevancy and immateriality** is reserved and may be urged at the trial of said cause."

We agree with the reasoning of the trial court as follows:

"With respect to the objections to the use of the deposition of Dr. H. K. Baldridge, the court is overruling the objection and permitting it to be used as testimony. The Caption and Stipulation and Agreement, as reflected in the deposition on pages 1 and 2, and referred to in the certificate of the person transcribing the notes as having come from her shorthand notes, contains sufficient waiver to overcome, in the court's opinion, the objections made as to the formalities required in the taking, certifying, filing, recording of the deposition. The statement of counsel reflects that, as of this time, opposing counsel did have a copy of the depositions. That they do have copies of the depositions seems to do away with the necessity of any formal notice by the clerk. The stipulation and agreement was to the effect that the same need not be submitted to the witness nor read to or by him, and reserved the right of the plaintiffs to object to the competency, materiality and relevancy of any testimony adduced. * * * The court further feels no statement is necessary further than that contained in the deposition itself, caption thereto, with reference to waiver of any rights of the

---

[2] Specific objections were as follows: "(a). The purported officer taking same did not certify, properly file, record or mark the same. (b). That no copy of such deposition was furnished opposing parties; (c). That no notice was given to all parties of such filing, if filed, as required by law; (d). That same was not submitted to witness or read to or by him as required by law; (e). That no opportunity was given witness to make any changes, if any were necessary; (f). Officer did not sign stating on record any waivers of rights;".

parties involved, for these reasons the objection is overruled, the motion is denied.''

In addition, no exceptions were filed to the use of the deposition until the second day of the trial, though it was not denied that counsel had copies of the deposition several months before the trial. Subsection (d) of § 28-354 provides as follows:

''Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Section 5 and 6 (§ § 28-352- 28-353) are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.'' We hold appellants' contention to be without merit.

Finding no reversible error, the judgment is affirmed.