TALLEY *v.* MORPHIS.

5-2040                                                334 S. W. 2d 652

Opinion delivered April 25, 1960.

92

*Ras Priest,* for appellant.

*Parker & Mobley, Wright, Harrison, Lindsey & Upton,* and *Pickens, Pickens & Boyce,* for appellee.

CARLETON HARRIS, Chief Justice. On March 17, 1959, appellant, E. E. Talley, a resident of Jackson County, Arkansas, instituted suit against J. H. Morphis and Frank Anderson, in the Circuit Court of that county, for alleged injuries suffered, and damages sustained in Jackson County when Talley's automobile was struck by a freight truck owned by Morphis, and driven by Anderson, both residents of Pope County. Morphis and Anderson filed an answer denying any negligence, and further stated that "the damages, if any, sustained by the plaintiff, were caused by the unlawful and negligent acts of the plaintiff, E. E. Talley, and George Davis." Davis, a neighbor of Talley, had used his truck to push Talley's car, which would not start, from the latter's yard out onto the pavement of the highway, and for a short distance thereafter. A counterclaim was filed wherein Morphis sought recovery for damages to his tractor, trailer, and cargo of potatoes, and Anderson sought judgment for personal injuries.[1] Thereafter, on April 22nd, Morphis and Anderson instituted suit in the Circuit Court of Pope County against Davis, and obtained service on Davis the following day; on May 22nd, appellant filed a motion to make Davis a third party defendant in the Jackson County suit. Appellees, Morphis and Anderson, replied to the motion, asserting that because of the action instituted against Davis in Pope County, the Circuit Court of Jackson County was without jurisdiction to make Davis a third party defendant. The court granted the motion, and Talley filed his third party complaint against Davis, setting out the allegations of negligence, contended by Morphis and Anderson in their suit against Davis in the Pope Circuit Court. The prayer was "that plaintiff have judgment against the defendants, J. H. Morphis and Frank Anderson, as prayed in his original complaint.

---

[1] Interventions were filed by three insurance companies who had issued policies covering damages to the tractor, trailer, and load of potatoes, caused through collision, seeking subrogation in event of recovery by Morphis.

In the alternative, plaintiff prays that he have judgment against the defendants, J. H. Morphis and Frank Anderson, and against the third party defendant, George L. Davis, in the sum of $25,000 damages, if it should be found that the third party defendant, George L. Davis, so negligently operated his truck as to prevent the defendant, Frank Anderson, the driver of the tractor trailer of the defendant, J. H. Morphis, from avoiding collision with plaintiff's automobile by steering said tractor trailer to the right and the rear of plaintiff's automobile. As a second alternative, plaintiff prays that the proportion and extent of contribution as between the plaintiff and the third party defendant, George L. Davis, be determined by the court, if it should be found that the collision here in controversy, was the result of the concurrent negligence of the plaintiff and of the third party defendant, George L. Davis, and not the result of the negligence of Frank Anderson, the driver of the tractor trailer, belonging to defendant, J. H. Morphis.'' After the court had refused a motion by Morphis and Anderson to vacate its order of May 22nd, they, reserving their rights relative to the jurisdiction of the court to make Davis a third party defendant, filed their third party complaint against Davis, alleging the same concurrent negligence on the party of Talley and Davis, as previously alleged in their counterclaim against Talley. Davis denied any negligence, and on June 9th, the cause went to trial. The court directed a verdict in favor of the third party defendant, Davis, and the jury returned a verdict finding that Talley should be charged with 66 2/3% of the total negligence resulting in the collision, and appellees, Morphis and Anderson, should be charged with 33 1/3%. The jury found no damages were sustained by Talley or Anderson, but found that Morphis was damaged in the amount of $8,666. On June 19th, judgment was entered in favor of appellee Morphis, against appellant Talley, in the sum of $5,777.32. From such judgment, Talley brings this appeal, and Morphis and Anderson have cross-appealed.

In contending for reversal, appellant lists several points, but all relate to, and are included in, the conten-

tion that there was insufficient evidence to support the jury verdict.

Talley's version of the collision was as follows: On the morning of December 12, 1958, he started to town. His car would not start, and he asked his neighbor, George Davis, to give him a push, the latter complying with the request. Talley stated that he drove up the highway about three hundred yards, looked in his rearview mirror, and saw a truck coming, but it was some distance back. He testified that he put out his hand and signaled a left turn, holding the hand out for a hundred feet or better before proceeding to start the turn; he heard no horn from any approaching vehicle. "Just as my wheels got off the slab, something hit me, and I went out, and I never knowed no more." Talley then detailed his injuries.

Davis testified that he pushed Talley for seventy or seventy-five feet on the highway before the latter's car started. According to the witness, Talley traveled about two-tenths of a mile before making a signal for a left turn. Davis, about fifty yards behind Talley, stated that he put on his brakes, slowing his car to permit Talley to get out of the way. "About that time, the truck pulled beside me and blew his horn. Well, when he blew his horn, Mr. Talley, I seen Mr. Talley was already in the turn. I seen there was going to be an accident." He first testified that Talley gave a turning signal about one hundred sixty feet before reaching the point of the collision, although on cross-examination he stated, "Well, he could have held it out 100 feet or he could have held it out five feet, but he held it out long enough that I could see he was going to make a left hand turn."

Anderson testified that he saw Talley and Davis enter the highway, being from three-tenths to four-tenths of a mile from them at the time . . . that he (Anderson) was driving at approximately fifty miles per hour . . . that he sounded his horn as he came up to Davis, who was about fifteen feet back of Talley . . . that he did not see Talley give any signal for a

turn . . . that after the collision he asked Davis if he saw Talley give any signal, and Davis replied, "I don't know, I knew he was going to turn."

Appellees contended at the trial that Talley was hard of hearing, and appellant admitted this to be true; they also contended that his eye-sight was not good. Talley, who was not wearing glasses at the time of the collision, stated that ten or fifteen years back he wore glasses, but was not presently using them. "Do you still have some glasses? A. No, sir, I have not, I broke my glasses. Q. But you used to wear them before you broke them? A. Oh, several years ago, but I lost them and never did get no more so I just went right on. Q. You do not have any glasses with you now in your back pocket? A. They are no good. They are broke. Q. But you do have some in your back pocket? A. Yes, sir, but they're no good. Q. But you didn't have those on, or any other glasses on, at the time of the accident? A. No, sir." Appellant testified that after first observing the truck through the mirror, he "didn't look back anymore." On cross-examination, he was less positive about giving the signal for the turn a hundred feet back, and admitted that he could have been closer to the point of the collision.

As was stated in *Hot Springs Street Railway Company* v. *Hill,* 198 Ark. 319, 128 S. W. 2d 369:

"In determining the sufficiency of the evidence to support a verdict, the Supreme Court views it with every reasonable inference arising therefrom in the light most favorable to the appellee, and if there be any substantial evidence to support the verdict, it will not be disturbed on appeal."

In *Alexander* v. *Botkins,* 231 Ark. 373, 329 S. W. 2d 530, we said:

"Accordingly, though appellants presented evidence which, if believed by the jury, would have justified a verdict for them, we are here only concerned with whether the evidence offered by appellee was of a substantial nature, sufficient to support a finding that the collision

was the result of negligence on the part of Mrs. Alexander, rather than the result of negligent acts on the part of Johnny Botkins.''

That same language is most pertinent here, for certainly there was sufficient evidence, if believed by the jury, to justify a verdict for appellant. On the other hand, the jury could have found that Mr. Talley did not signal a turn, or, could have believed, from the evidence, that even though his signal was given, it was not given in conformity with the statute, which provides that ''A signal of intention to turn right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.''[2] Here, Talley admitted that the signal might not have been given for that distance. Appellant likewise admitted that he did not again look through the mirror to ascertain the whereabouts of the truck after first seeing it, at which time ''it was a good piece down the road''; the jury could have found that Anderson blew his horn (which was also testified to by Davis), but that Talley, because of deafness, did not hear it. Any, or all, of these conclusions could have been reached by the jury, from which they found the negligence upon which their verdict was based. We conclude that the testimony was sufficient to support the findings of the jury.

The cross appeal relates to the action of the court in permitting Talley to bring in Davis as a third party defendant, it being contended that this was error. Our statutory provisions relative to venue are found in §§ 27-610 and 27-611, Ark. Stats. (1947) Anno. Appellees assert that, under our holdings involving the interpretation of these sections, where several parties are involved in an automobile collision, and actions are brought in more than one county having venue, the one first acquiring service of summons on his adversary has the right to litigate his claim or portion of the lawsuit in the jurisdiction or venue of his choice. We have so held. See *Kornegay* v. *Auten, Judge on Exchange,* and *Melton, Administrator* v. *Auten, Judge on Exchange,* 203 Ark.

---

[2] Paragraph B, § 75-618, Ark. Stats. Anno.

687, 158 S. W. 2d 473. The circumstances, however, in this litigation, present an unusual question, not previously passed upon, for § 34-1007 provides, *inter alia*:

"Before answering, a defendant seeking contribution in a tort action may move *ex parte* or, after answering, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person not a party to the action who is or may be liable as a joint tortfeasor to him or to the plaintiff for all or part of the plaintiff's claim against him. If the motion is granted and the summons and complaint are served, the person so served, hereinafter called the third-party defendant, shall make his defense to the complaint of the plaintiff and to the third-party complaint in the same manner as defenses are made by an original defendant to an original complaint. The third-party defendant may assert any defenses which the third-party plaintiff has to the plaintiff's claim. The plaintiff shall amend his pleadings to assert against the third-party defendant any claim which the plaintiff might have asserted against the third-party defendant had he been joined originally as a defendant. The third-party defendant is bound by the adjudication of the third-party plaintiff's liability to the plaintiff as well as of his own liability to the plaintiff and to the third-party plaintiff. A third-party defendant may proceed under this section against any person not a party to the action who is or may be liable as a joint tortfeasor to him or to the third-party plaintiff for all or part of the claim made in the action against the third-party defendant.

(2) When a counterclaim is asserted against a plaintiff he may cause a third-party to be brought in under circumstances which under this section would entitle a defendant to do so."

Talley, of course, sought to file his third-party complaint under paragraph (2). Considering the statutes, here under discussion, separately, it would appear that both appellant and appellees proceeded in accordance with statutory provisions; obviously, however, this cannot be done in the instant case, for a conflict arises.

Upon consideration, we have reached the conclusion that there are additional facts present in this litigation, which preclude a clear determination of which statute (venue, or third-party practice under uniform contribution among tort-feasors act) pre-empts the other when conflicts arise. Here, appellant had filed his complaint against appellees only. If, in filing their counterclaim, appellee had sought recovery against Talley solely because of his negligence, and Talley had then endeavored to bring in Davis as a third-party defendant — the question, heretofore posed, would be squarely before the Court. However, appellees alleged the sole proximate cause of the collision to be "the joint and concurrent negligence of E. E. Talley and George Davis." Accordingly, alleged negligence on the part of Davis was first averred by appellees, even though they sought no judgment against him in the Jackson Circuit Court. Also, suit was not instituted in Pope County by appellees until after the counterclaim had been filed against Talley in Jackson County. This suggestion of liability on the part of Davis by appellees undoubtedly precipitated Talley's motion to make Davis a party. We think, under those circumstances, it was within the sound discretion of the court to grant the motion. See *Rudolph* v. *Mundy*, 226 Ark. 95, 288 S. W. 2d 602. The error, if any (and we do not say it was error), though it cannot be strictly and technically classed as invited error, was certainly closely akin in principle, for appellant's motion, not only was likely initiated because of appellees' pleadings, but the logic of making Davis a defendant was supported by appellees' allegations.

Finding no error, the judgment of the court, both on direct and cross appeal, is affirmed.